Commonwealth *v.* Johnson, Appellant.

Submitted April 27, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*James R. Adams,* for appellant.

*Maxine J. Stotland* and *Milton M. Stein,* Assistant District Attorneys, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

132

OPINION BY MR. JUSTICE NIX, May 23, 1973:

Appellant, Samuel Lee Johnson, was arrested on September 14, 1970, and indicted for murder, aggravated robbery, forcible rape, burglary and conspiracy. In May of 1971, after a motion to suppress his confession was denied, a jury found appellant guilty on all of the above charges except forcible rape, to which a demurrer was sustained. Following the denial of post-trial motions, he was sentenced to life imprisonment on the indictment charging murder, ten to twenty years on both the aggravated robbery and burglary indictments, each sentence to run concurrently with the sentence imposed on the murder indictment, and sentence was suspended on the conspiracy bill. This direct appeal followed from the imposition of sentence.[1]

The first assignment of error is directed to the lower court's admission of an alleged written statement of the appellant. The challenge is bottomed upon alternative bases: First, that the testimony offered during the suppression hearing was so conflicting that the record does not sustain the finding of the court below that the statement was voluntary. Secondly, it is urged that the written statement merely represents a "conglomeration of extracts from two hours of conversation, the major part of which we know absolutely nothing about."

Considering first the claim that the record is so contradictory and incomplete that as a matter of law the court should have suppressed the statement, we find that argument to be without support on this record. While there are some conflicts in the testimony as to the circumstances surrounding the challenged

---

[1] Separate appeals on the burglary, robbery and conspiracy indictments were filed in the Superior Court. These appeals were certified to this Court and consolidated with the appeal from the murder indictment.

statement, they were not of such proportion or quality that a hearing judge would have been forced to reject the Commonwealth's position that the statement was voluntary and not coerced. After reviewing the record we are satisfied that there was ample basis for the lower court's finding that the statement was the product of the will of appellant and not coerced.

In reviewing the findings of a suppression court, we have recently observed that "[t]he question is one of fact initially to be determined by the trial court and where, as here, the suppression court's findings have ample support in the record, we cannot say that the court erred as a matter of law in concluding the confession was admissible." *Commonwealth v. Sharpe*, 449 Pa. 35, 44, 296 A. 2d 519, 524 (1972). *See Commonwealth v. Stafford*, 451 Pa. 95, 301 A. 2d 600 (1973); *Commonwealth v. Eiland*, 450 Pa. 566, 301 A. 2d 651 (1973); *Commonwealth v. Harmon*, 440 Pa. 195, 269 A. 2d 744 (1970). The evidence offered by the Commonwealth clearly established that appellant was fully advised of his constitutional rights and was subjected to neither improper inducements or promises, nor to threats of force or coercion from the interrogating officers. The record is barren of any evidence of either physical or psychological coercion that would render the statement inadmissible.

The second claim, which suggests that the statement was not an accurate reflection of the words of the appellant, goes not to the competency of the questioned statement but rather to the credibility to be given to that document. *See, e.g., United States v. Myers*, 384 F. 2d 737, 742 (3d Cir. 1967); *Commonwealth v. Carluccetti*, 369 Pa. 190, 203-04, 85 A. 2d 391 (1952). It was therefore within the province of the jury to accept or reject its contents after a proper charge from the court. There has been no objection suggesting that the

court improperly or inadequately instructed the jury on the question of credibility. From the testimony it is evident that during the interrogation statements were made that were not recorded. However, there has been no demonstration that any subject matter was deleted which materially changed or distorted the appellant's version of the occurrence. Appellant was afforded the opportunity to read the statement and did in fact sign each page signifying his knowledge of and agreement with the contents. The accuracy of the contents of the questioned statement was properly placed before the jury and there is no reason shown why this Court should disturb their determination.

Appellant also contends that the refusal of the trial court to permit his counsel to ask certain questions on voir dire constituted reversible error. During the voir dire examination of the prospective jurors, the court refused to allow defense counsel to propound the following questions: "Q. Do you have any strong viewpoints against the drinking of alcoholic beverages? Q. Do you have any fixed opinion about the credibility of psychiatrists and their opinions? Q. . . . Have you ever served on any type of jury before this?"

It is well-settled that "[t]he examination of jurors under voir dire is solely for the purpose of securing a competent, fair, impartial and unprejudiced jury. . . . Neither counsel for the defendant nor for the Commonwealth should be permitted to . . . ask direct or hypothetical questions designed to disclose what a juror's present impression or opinion may be or what his attitude or decision will likely be under certain facts which may be developed in the trial of the case. While considerable latitude should be permitted on a voir dire, *the inquiry should be strictly confined to disclosing qualifications of a juror and whether a juror has formed a fixed opinion or may be otherwise subject to*

*disqualifications for cause." Commonwealth v. Mc-Grew*, 375 Pa. 518, 525, 100 A. 2d 467, 470 (1953) (emphasis added). *See, Commonwealth v. Biebighauser*, 450 Pa. 336, 346, 300 A. 2d 70, 75 (1973); *Commonwealth v. Hoss*, 445 Pa. 98, 107, 283 A. 2d 58, 63, 64 (1971); *Commonwealth v. Swanson*, 432 Pa. 293, 299, 248 A. 2d 12, 15 (1968); *Commonwealth v. Lopinson*, 427 Pa. 284, 297-98, 234 A. 2d 552, 560-61 (1967). The scope of voir dire examination rests in the sound discretion of the trial judge, *see, e.g., Commonwealth v. Biebighauser, supra; Commonwealth v. Lopinson, supra*, and we are satisfied that the record before us fails to demonstrate any abuse of that discretion.

In the instant case, appellant's questions attempting to ascertain the venireman's personal reaction to those who imbibe alcoholic beverages was far removed from the issue before the court and properly prohibited by the court below. We are satisfied that the normal aversion to the improvident use of alcoholic beverages was unquestionably outweighed by the awareness of the responsibility and duty of jurors to ascertain the guilt or innocence of the appellant who stood accused of serious breaches of our law. There is no support in the record that would justify appellant's argument that the prohibition of this line of inquiry permitted the jury to convict him for his intemperance rather than for the charges for which he was accused.

Similarly, the trial court was acting within its discretion when it barred a line of questioning with respect to a venireman's fixed opinion or prejudice against psychiatrists or psychiatric testimony. The apparent purpose of this line of questioning was to obtain information as to the verdict which the juror would render upon the production of psychiatric evidence. However, as was noted in *Commonwealth v. McGrew, supra*, the purpose of voir dire is not to de-

termine in advance what a juror's attitude will likely be if certain facts develop during trial. As we recognized above, the purpose of the voir dire examination is to disclose qualifications or lack of qualifications of a juror and in particular to determine whether a juror has formed a fixed opinion as to the accused's guilt or innocence. The law recognizes that it would be unrealistic to expect jurors to be free from all prejudices, a failing common to all human beings. We can only attempt to have them put aside those prejudices in the performance of their duty, the determination of guilt or innocence. We therefore do not expect a tabula rosa but merely a mind sufficiently conscious of its sworn responsibility and willing to attempt to reach a decision solely on the facts presented, assiduously avoiding the influences of irrelevant factors.

The lack of merit of this particular complaint is further illustrated by the fact that the only psychiatric testimony introduced by the defense was in the mitigation of the penalty and the jury saw fit to return the verdict most favorable to the defense in this regard, life imprisonment.

The lower court also properly prevented counsel from inquiring into the venireman's possible prior service as juror. There is no reasonable correlation between a juror's prior jury service and his ability to render a fair and just verdict in the instant case. *Cf. Commonwealth v. Corbin,* 426 Pa. 24, 231 A. 2d 138 (1967). The obvious purpose of such questioning was to attempt to determine how a juror may have responded to another trial situation and thus enable counsel to anticipate his decision in the instant controversy, clearly an improper use of voir dire. In any consideration of the scope of voir dire it must be remembered that the jury system is designed to have the cause decided upon its merits and not the idiosyncrasies of the

jurors who have by chance been called to decide the issues.

Lastly, appellant argues that it was an abuse of discretion for the trial court to deny him the opportunity to examine prospective jurors as to their ability to accept and apply the law. We do not believe that the trial court abused its discretion by refusing to allow defense counsel to probe into this area. The court had already specifically instructed every member of the panel that they must accept the law as given to them by the court and then apply that law to the facts. When asked, no member of the panel expressed any doubt as to his or her ability to accept and apply the law.

We do not believe that prospective jurors should be treated as hostile witnesses; nor do we assume that they have failed to be completely candid with the court in responding to questions. Where the response has been unequivocal there is no basis for further inquiry. Admittedly, jurors, like all mortals, are fallible, thus we can only hope to impress upon them their sworn responsibility to render a verdict that is both fair, just, and in accordance with the testimony presented.

Judgments of sentence affirmed.