## Commonwealth *v.* Brown, Appellant.

Submitted December 3, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, CERCONE, and SPAETH, JJ. (SPAULDING, J., absent.)

*Henry J. Lunardi,* for appellant.

*David Richman* and *James T. Ranney,* Assistant District Attorneys, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY WATKINS, P. J., June 21, 1974:

This is an appeal from the judgment of sentence of the Court of Common Pleas, Trial Division, of Philadelphia, by the appellant-defendant, Rhodolphus Brown, after conviction by a jury of forcible rape and corrupting the morals of a minor; and from the denial of post-trial motions. The appeal raises several reasons for a new trial: (1) insufficient evidence to convict him of the charges; (2) consent; and (3) that the court below abused its discretion in refusing to permit certain questions on voir dire examination.

As to contentions (1) and (2), the matter was for the jury to resolve the credibility of the witnesses and they are without merit. The jury was selected on January 11th and testimony was completed on January 12th. The record indicates that the trial judge became ill so that closing arguments, the charge of the court and the deliberation of the jury took place on January 17th. There was no prejudice to the appellant by this delay.

The questions requested at voir dire are as follows:

(1) ". . . 2. Have you (or anyone you know) ever been involved in a rape or attempted rape?

(2) ". . . 4. Would you, or do you, get upset or take special note when you see a white girl and a black man walking together; talking together; holding hands?"

The scope of voir dire examination and the manner and procedure of such examination rests within the discretion of the trial judge. *Commonwealth v. Cephas,* 213 Pa. Superior Ct. 278, 247 A. 2d 662 (1968). Examination under voir dire is limited to determining if a juror is subject to disqualification for cause, for lack of qualifications, or for a fixed opinion. *Commonwealth v. Cephas,* supra. Nothing short of palpable abuse of discretion justifies a reversal in passing on a challenge for cause. *Commonwealth v. Johnson,* 452 Pa. 130, 305 A. 2d 5 (1973); *Commonwealth v. Colon,* 223 Pa. Superior Ct. 202, 299 A. 2d 326 (1972); *Commonwealth v. Corbin,* 426 Pa. 24, 231 A. 2d 138 (1967). It is equally true that the scope of the voir dire examination is not to provide the defense with a basis upon which he utilizes his peremptory challenges. *Commonwealth v. Lopinson,* 427 Pa. 284, 234 A. 2d 552 (1967).

The questions as framed leave much to be desired if their purpose was to disclose racial prejudice and knowledge of former sexual offenses and the refusal of the trial court to permit them could not fall within the definition of palpable abuse of discretion.

The court below carefully questioned the prospective jurors about their knowledge of the case, their relationship to police officers and went into detail as to their responsibility as jurors. Among the many questions asked by the court below were the following:

"THE COURT: Now, it will be your duty, members of the panel, throughout the course of this trial to carefully observe each and every witness who shall come before you, and to determine for yourselves by the basis of your own experience as to who is telling the truth or how much of that witness's testimony is true

or reliable, and that is your function and not anyone else's. Can you bring to bear in the jury box all of your experiences in life, together with certain guidelines that the Court will lay down for you as to truthfulness, which are not difficult to follow, and appraise the truthfulness or veracity or reliability of each and every witness on an individual basis using the same standards and tests as to all of the witnesses who may come before you and without any regard to his station in life or her station in life, or occupation, or any other matter that would tend to influence you? If there is anyone among you who feels that he or she cannot do that, will you please raise your hand. (No response)

"Do any of you know of any reason whatsoever why you should not serve on this jury? There are no affirmative responses.

"Do any of you, no matter what the reason may be, presently have any basis or prejudice that in any way might tend to deprive this defendant of a fair, just and impartial trial? If so, raise your hand. (No response)

"Can every one of you be fair, just and impartial to both sides, that is, both the Commonwealth and the defense? If your answer is yes, you believe that you can be fair and impartial kindly raise your hand."

In *Commonwealth v. Foster*, 221 Pa. Superior Ct. 426, 293 A. 2d 94 (1972), a four to three decision of this Court, the black defendant was tried by an all white jury so that racial discrimination may have been involved and relevant. But in the instant case, the situation is entirely different. The jury panel in this case consisted of both black and white jurors and the jury selected for trial was composed of nine white and three black veniremen. We believe that the court's comment, when there was a racially mixed population in the area of trial, and a racially mixed composition of the panel and the jury itself, that the court should be "color blind", makes common sense. Under such cir-

cumstances it is difficult to see the relevance of the question posed and most certainly its refusal does not rise to palpable abuse of discretion.

Question 2 falls in the same category and in addition is entirely too broad. The determination of its asking falls well within the discretion of the court.

Judgment of sentence affirmed.

---

DISSENTING OPINION BY HOFFMAN, J.:

Appellant's primary contention is that the trial court committed palpable error in refusing a written request to pose two questions to prospective jurors on voir dire examination that the defense considered crucial to its case.[1]

Appellant was tried before the Honorable Thomas M. REED, Judge of the Common Pleas Court of Philadelphia, and a jury, on January 11-17, 1973.[2] The jury returned a verdict of guilty on the charges of forcible rape and corrupting the morals of a minor. Following the denial of post-trial motions, the instant appeal was filed. At trial, two versions of the incident were presented: The complainant testified that, on September 2, 1972, at approximately 10:30 p.m., she was at the apartment of a friend at 6124 Broad Street, and went out to buy sodas at a nearby McDonald's restaurant,

---

[1] Appellant also alleged that there was insufficient evidence to convict him on the charges against him. While the versions were at opposites, it was certainly within the province of the trier-of-fact to resolve the conflict in the testimony in favor of the complainant. Since appellant admitted to the encounter and sexual intercourse with the complainant, the only remaining issue was that of consent or force, which as testified, could only be a question of credibility.

[2] The jury was selected on January 11; testimony was concluded on January 12. The record discloses that the trial judge became ill, and closing arguments and jury deliberation could not be made until January 17. There appears no basis for a contention that his delay prejudiced the appellant's case or in any way was contrived to injure his case.

As she was walking, she noticed a gold Chevrolet parked in the lot, and two black men standing by the car. She stated that one of the men asked her if she wanted to smoke a "joint". She refused and entered the restaurant. Upon emerging, she noticed the car was parked at the exit portion of the lot, and as she passed to return to her friend's apartment, she was grabbed and thrown into the back seat of the vehicle. She was taken to a park, and after being threatened by the two men, reluctantly submitted to acts of intercourse with each. She was returned to the restaurant, whereupon she memorized the license plate number of the automobile (later traced to the appellant) and reported the attack to the police.

Appellant offered the defense of consent. He stated that upon emerging from the restaurant, she engaged in a conversation with the appellant and his companion. She entered the vehicle and smoked a "couple of joints". Appellant stated that, in this amiable atmosphere, she then engaged in consensual intercourse with him and his friend. Appellant said that he noticed that immediately upon returning the complainant to the restaurant she entered another car occupied by two white men.

During jury selection, and in accordance with Pa. R. Crim. P. 1107, defense counsel submitted a list of questions to supplement those the trial judge would ask to prospective jurors.[3] Among those questions were the following two questions:

---

[3] Pa. R. Crim. P. 1107 provides: "In any case which is not a capital case, the judge may permit the voir dire and selection of jurors to be conducted in the manner established in Rule 1106. . . ." The trial court opted to examine the jurors on its own. Pa. R. Crim. P. 1106(f) stated that "[t]he judge may conduct the examination of the jurors or he may permit the parties to do so. In the event that the judge conducts the examination or requires the submission of written questions, he shall permit such additional

". . . 2. Have you (or anyone you know) ever been involved in a rape or attempted rape?

". . . 4. Would you, or do you, get upset or take special note when you see a white girl and a black man walking together; talking together; holding hands?"

The objective of voir dire examination of jurors is to secure a competent, fair, impartial and unprejudiced jury. *Bentivoglio v. Ralston,* 447 Pa. 24, 288 A. 2d 745 (1972); *Commonwealth v. Corbin,* 426 Pa. 24, 26, 231 A. 2d 138 (1967). The only legitimate inquiry is confined to "disclosing qualifications or lack of qualifications of a juror and whether a juror has formed a fixed opinion [as to the accused's guilt or innocence] or may be otherwise subject to disqualification for cause." *Commonwealth v. Lopinson,* 427 Pa. 284, 297-8, 234 A. 2d 552 (1967), citing with approval *Commonwealth v. McGrew,* 375 Pa. 518, 525, 100 A. 2d 467 (1953). It is well-settled that the scope of voir dire examination rests in the sound discretion of the trial judge, and refusal to allow certain questions will not be reversed unless there has been a palpable "abuse of discretion." *Commonwealth v. Johnson,* 452 Pa. 130, 135, 305 A. 2d 5 (1973); *Commonwealth v. Lopinson,* supra. This Court has repeatedly held, however, that a complete denial of the right to an examination of jurors to show bias or prejudice constitutes palpable error, and entitled the defendant to a new trial. *Commonwealth v. Foster,* 221 Pa. Superior Ct. 426, 429, 293 A. 2d 94 (1972); *Commonwealth v. Grauman,* 52 Pa. Superior Ct. 215 (1912).

Our Supreme Court has upheld the refusal of questions which sought to inquire into the specific prejudices of the jurors with respect to peculiar or unique elements or characteristics of the defendant, victim

questions as he deems proper to supplement or clarify the answers elicited from the jurors."

or circumstances, especially where the "direct or hypothetical questions [are] designed to disclose what a juror's present impression or opinion may be or what his attitude or decision will likely be under certain facts which may be developed in the trial of the case." *Commonwealth v. Johnson*, supra at 134. It is sufficient that the trial judge ask the jury simply if there is anything in the nature or circumstances of the case which would stand in the way of their ability to render a fair and impartial verdict. See *Commonwealth v. Hoss*, 445 Pa. 98, 283 A. 2d 58 (1971). In the instant case, the trial judge did ask such a question, and elicited no response that would have required further specific inquiry or exclusion on appellant's implied contention that a juror's prior involvement directly or indirectly in a "rape or attempted rape" could impede his or her ability to deliberate the matter fairly.

The United States Supreme Court has recognized an exception to this discretionary general inquiry on the bias or prejudice of potential jurors. The Court has held that, under the peculiar facts of a case involving a certain defendant, it may be necessary to ask a specific question on the prejudices or bias toward a defendant to insure the Fifth or Fourteenth Amendment's guarantee of due process of law. In *Aldridge v. United States*, 283 U.S. 308 (1931), the Court reversed the judgment of conviction of a Negro defendant accused of murdering a white policeman, because the trial court had improperly and unconstitutionally refused questions which would have "focus[ed] the attention of prospective jurors to any *racial* prejudice they might entertain." *Ham v. South Carolina*, 93 S. Ct. 848, 851 (1973). In the recent case of *Ham v. South Carolina*, supra, in an opinion delivered by Justice REHNQUIST, the Supreme Court of the United States followed the dictates of *Aldridge*, and reversed the conviction of black civil rights worker on possession of marijuana.

The Court held that while the trial court's refusal to inquire on the prejudices of the prospective jurors towards beards, did "not reach the level of a constitutional violation. . . ," 93 S. Ct. at 851, the court's refusal to accept defense counsel's timely request to inquire into the racial prejudice of the jurors deprived the defendant of due process of law as guaranteed by the Fourteenth Amendment. See also *Commonwealth v. Foster*, 221 Pa. Superior Ct. 426, 293 A. 2d 94 (1972).

I believe that defense counsel's written request to inquire into the possible prejudice or bias of prospective jurors towards even a voluntary and amicable relationship between black males and white females, was designed to disclose racial discrimination, and in no way, was directed to disclose an opinion or judgment of "facts to be developed at trial."[4] The denial of defense counsel's request and the mere general inquiry into the jury's ability to fairly and impartially deliberate the case before them was, in my opinion, a denial of due process, and a palpable abuse of discretion.

---

[4] In its Brief, the Commonwealth suggests that the question, as posed by defense counsel, was immaterial and would not have elicited a response demonstrating any prejudice whatsoever. Instead, the Commonwealth suggests that the proper question would have been: "Would you, or do you, get upset or take special note when you hear about an attack by a black man upon a white woman?" On the basis of the universal legal precedent in this area, the proposed question would have been improper. It, certainly, would seek to obtain an opinion from a prospective juror on a matter "to be developed at trial," and while it could elicit the prejudices of the jurors, it would not accomplish the same result, in as clear a fashion, as the question actually requested for submission by the defense. A Juror could respond that he would be upset about a black man attacking a white woman, but he could likewise be offended by a black man attacking a black woman, or a white man attacking a white woman. However, an affirmative response to the question of being upset about an amiable relationship between a racially-mixed couple would disclose the very kind of racial prejudice that the Fourteenth Amendment guards against.

The judgment of sentence should be reversed and a new trial granted.

SPAETH, J., joins in this dissenting opinion.