J-A16019-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| LUKE FRAWLEY | |
| Appellant | No. 702 WDA 2013 |

Appeal from the Judgment of Sentence March 28, 2013
In the Court of Common Pleas of Butler County
Criminal Division at No(s): CP-10-CR-0001409-2011

BEFORE: DONOHUE, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.: **FILED SEPTEMBER 09, 2014**

Luke Frawley appeals from the judgment of sentence imposed on him on March 28, 2013, in the Court of Common Pleas of Butler County following his conviction by a jury on a variety of drug related charges.[1] In this appeal, Frawley raises two issues. First, he claims the trial court erred when it refused to grant a challenge for cause for a juror who stated he would give more weight to the police over an ordinary citizen. Second, he claims the trial court erred in refusing to allow him to cross-examine a Commonwealth witness on the witness's entire criminal history. Following a thorough review of the submissions by the parties, relevant law, and the certified record, we agree that it was error not to strike the juror in question for cause.

_____

[1] Given our disposition of this appeal, we need not relate the specific charges or sentence imposed.

Accordingly, we vacate the judgment of sentence and remand for a new trial.

After three controlled purchases by a confidential informant, Frawley was arrested and charged with a variety of drug offenses. Frawley was scheduled to go to trial on Monday, December 10, 2012 and a jury was selected on Friday, December 7, 2012. During jury selection, venire person number 1 stated,[2] "I believe the police officers are sworn to protect us and to be honest so I would give more weight to what they said." **See** N.T. Jury Selection, 12/7/2012, at 41. Subsequently, defense counsel moved to strike Juror No. 1 for cause, but the motion was denied. Frawley exercised one of his seven peremptory challenges to remove Juror No. 1. He used all of his peremptory challenges in the selection process.

Our standards of review are as follows:

> A challenge for cause to service by a prospective juror should be sustained and that juror excused where that juror demonstrates through his conduct and answers a likelihood of prejudice. **Commonwealth v. Colson**, 507 Pa. 440, 490 A.2d 811 (1985). The decision whether to disqualify a venireman is within the discretion of the trial court and will not be disturbed on appeal absent a palpable abuse of that discretion. **Commonwealth v. Colson**, **supra**; **Commonwealth v. Bighum**, 452 Pa. 554, 307 A.2d 255 (1973); **Commonwealth ex rel. Fletcher v. Cavell**, 395 Pa. 134, 149 A.2d 434 (1959); **Commonwealth v. Pasco**, 332 Pa. 439, 2 A.2d 736 (1938); **Commonwealth v. Gelfi**, 282 Pa. 434, 128 A. 77 (1925).

**Commonwealth v. Ingber**, 531 A.2d 1101, 1103 (Pa. 1987).

---

[2] Hereafter, "Juror No. 1".

Additionally, we are cognizant that,

[a] criminal defendant's right to an impartial jury is explicitly guaranteed by Article I, section 9 of the Pennsylvania Constitution, Pa. Const. Art. I, § 9. The jury selection process is crucial to the preservation of that right. The relevant principles governing the examination of veniremen to assess their impartiality are set forth in this Court's decision in **Commonwealth v. Drew**, 500 Pa. 585, 459 A.2d 318 (1983):

It must be remembered the purpose of the *voir dire* examination is to provide an opportunity to counsel to assess the qualifications of prospective jurors to serve. **Commonwealth v. Johnson**, 452 Pa. 130, 305 A.2d 5 (1973); **Commonwealth v. Lopinson**, 427 Pa. 284, 234 A.2d 552 (1967), *vacated and remanded* 392 U.S. 647, 88 S.Ct. 2277, 20 L.Ed.2d 1344, appeal after remand, 449 Pa. 3, 296 A.2d 524, *cert. denied,* 411 U.S. 986, 93 S.Ct. 2269, 36 L.Ed.2d 963 (1973); **Commonwealth v. McGrew**, 375 Pa. 518, 100 A.2d 467 (1953). It is therefore appropriate to use such an examination to disclose fixed opinions or to expose other reasons for disqualification. **Commonwealth v. Johnson**, **supra**; **Commonwealth v. Swanson**, 432 Pa. 293, 248 A.2d 12 (1968), *cert. denied* 394 U.S. 949, 89 S.Ct. 1287, 22 L.Ed.2d 483 (1969); **Commonwealth v. Lopinson**, **supra**; **Commonwealth v. McGrew***, supra.* Thus the inquiry must be directed at ascertaining whether the venireperson is competent and capable of rendering a fair, impartial and unbiased verdict. **Commonwealth v. Johnson**, **supra**; **Commonwealth v. Lopinson***, supra;* **Commonwealth v. McGrew***, supra.* The law also recognizes that prospective jurors were not cultivated in hermetically sealed environments free of all beliefs, conceptions and views. The question relevant to a determination of qualification is whether any biases or prejudices can be put aside upon the proper instruction of the court. **Commonwealth v. England**, 474 Pa. 1, 375 A.2d 1292 (1977); **Commonwealth v. Johnson***, supra.*

**Id**. at 588, 459 A.2d 320.

**Id**. at 1102-03.

Relevant to this appeal, the following exchange took place during *voir dire*.

> THE COURT: We are going to start with the questionnaires now. Juror number one, stand up. We'll run down these. You checked yes to the question that states would you be more likely to believe the testimony of a police officer because of his or her job. Now, you were upstairs when I went over the basic principles of law with you this morning, correct?
>
> JUROR NO. 1: Yes.
>
> THE COURT: And I told you that your job as a juror is to determine who you're going to believe and who you don't believe, correct?
>
> JUROR NO. 1: Yes.
>
> THE COURT: And I told you that you are to evaluate the credibility, that is, the believability of witnesses in the same manner and not give any different standard for different witnesses, do you recall that?
>
> JUROR NO. 1: Yes, I do.
>
> THE COURT: Do you recall me telling you that you are not to believe a police officer simply because they're a police officer and you are not to disbelieve a police officer simply because they're a police officer? Do you recall that?
>
> JUROR NO. 1: Yes, I do.
>
> THE COURT: So, if you were selected to be a juror in this case, would you be able to accept and follow my instructions that you are to evaluate the credibility of police officer[s'] testimony in the same way and to the same extent as you do a civilian?
>
> JUROR NO. 1: I would have trouble with it at times depending on the situation.

THE COURT: Okay. That's all the questions I have. Mr. Gettleman [defense counsel], any follow up?

MR. GETTLEMAN: No thank you, sir.

THE COURT: How about you, Miss Sheehan [Deputy Attorney General]?

MS. SHEEHAN: Just briefly, sir. Juror number one you indicated at times are there specific instances?

JUROR NO. 1: I believe the police officers are sworn to protect us and to be honest so I would give more weight to what they said.

MS. SHEEHAN: Thank you, sir.

THE COURT: Any other questions you want to ask number one anyone?

MR. GETTLEMAN: I have none.

N.T. Jury Selection, 12/7/2012, at 40-42.

At the end of *voir dire*, and just prior to the actual selection of jurors, the court inquired if there were any more challenges. At that time, Juror No. 1 was challenged for cause and the challenge was denied.

In the Pa.R.A.P. 1925(a) Opinion, the Honorable William R. Shaffer, cited the above quoted exchange with Juror No. 1 and stated,

> [**Commonwealth v.**] **Ingber** involved a denial of a challenge for cause where a prospective juror answered "I would" to the question, posed during jury selection, "Is there anyone who would give greater weight to the testimony of a police officer merely because the witness was in fact a police officer?" *Id*. The Supreme Court found the trial court's denial of the

- 5 -

challenges for cause to be reversible error. A new trial was granted because of the effective deprivation of the use of peremptory challenges. To the extent *Ingber* is controlling, the same outcome is warranted in this case.

Trial Court Opinion, 7/30/2013, at 7.

We have reviewed *Commonwealth v. Ingber*, *supra*, and believe it represents controlling law. Therefore, we agree with the trial court that a new trial is warranted. As noted, in *Ingber*, the potential juror gave a similar answer to Juror No. 1. Our Supreme Court reversed both the trial court and Superior Court, finding the failure to dismiss the potential juror was error and that the wrongful deprivation of a peremptory challenge constituted reversible error. Specifically, the Supreme Court stated:

Wrongful deprivation of one or more of the number of peremptory challenges provided for by statute or rule of court is clearly an impairment of the defendant's exercise of his right to peremptory challenges. *See Harrison, v. United States*, 163 U.S. 140, 16 S.Ct. 961, 41 L.Ed. 104 (1896). The trial court's rulings on the challenges for cause discussed above, which had the effect of denying appellant of two of his seven peremptories, was therefore reversible error.

*Ingber*, 531 A.2d at 1105.

Additionally, we note that two years after *Ingber*, our Supreme Court reiterated this position in *Commonwealth v. Lane*, 555 A.2d 1246 (Pa. 1989). In *Lane*, the trial court erroneously sustained an objection for cause, thereby improperly striking a juror. Our Supreme Court stated, directly, that such errors are inherently harmful.

- 6 -

Having concluded that the trial court was in error in sustaining the challenge for cause, it must be determined whether the error was harmless. The Commonwealth claims that the discharge of Mr. Mellen did not constitute prejudice to the defendant. This is merely another way of stating that, if the ruling was error, the error would have been harmless. We are also constrained to disagree with this contention. As we have previously noted, it is foreign to our concept of justice to permit the trial judge, who serves in the role of the impartial arbiter, to intrude into the jury selection process in such a manner as would favor one side to the contest. Such a departure from our jurisprudence could never be condoned and therefore could never be treated as harmless. In effect, the trial judge in this case peremptorily excluded a juror. That is the function of the advocate, not the jurist.

*Lane*, 555 A.2d at 1252 (Pa. 1989).

Finally, we note that the Commonwealth has argued that *Ingber* is distinguishable from the instant case in that Juror No. 1 was equivocal in his answer and police credibility was not at issue. We find these arguments unavailing.

The Commonwealth attempted to limit the impact of Juror No. 1's statement by questioning what circumstances would lead to the Juror finding a police officer to be more credible. At that point, Juror No. 1 gave a blanket statement that police officers are "sworn to protect us and to be honest so I would give more weight to what they said." N.T. Jury Selection, 12/7/2014 at 41. We find nothing equivocal about this statement.

Regarding the testimony of the police witnesses, we note that at *voir dire* six of the nine potential prosecution witnesses were law enforcement officers - either police officers, agents of the Attorney General's Office or

crime lab technicians. At trial, three of those six testified as well as a detective from the District Attorney's Office, who testified as an expert witness.[3] Our review of the notes of testimony of the trial indicates police credibility was at issue. Therefore, we reject this aspect of the Commonwealth's argument.

Given our disposition of this issue, we need not address Frawley's evidentiary issue, which was specific to the prior trial.

Judgment of sentence vacated. Case remanded for a new trial. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/9/2014

---

[3] This witness was not identified to the potential jurors at *voir dire*.