J-A22007-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ROBERT LEE DUVALL | |
| Appellant | No. 1900 MDA 2013 |

Appeal from the Judgment of Sentence July 15, 2013
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0001394-2012

BEFORE:  PANELLA, J., SHOGAN, J., and FITZGERALD, J.[*]

MEMORANDUM BY PANELLA, J.                    **FILED MARCH 09, 2015**

Appellant, Robert Lee Duvall, appeals from the judgment of sentence entered July 15, 2013, by the Honorable Michael E. Bortner, Court of Common Pleas of York County.  Duvall alleges on appeal that the use of, *inter alia*, deceptive police tactics rendered his confession made during a non-custodial interrogation involuntary.  After careful review, we affirm.

On September 7, 2011, Pennsylvania State Trooper Neal Navitsky received a report of sexual assault regarding P.B., who has Downs Syndrome.  P.B. reported to her job coach at the Penn-Mar Organization that her stepfather, Duvall, had sexually assaulted her on numerous occasions.  Trooper Navitsky contacted Duvall and requested that he come in for an

_____

[*] Former Justice specially assigned to the Superior Court.

interview. Duvall voluntarily went to the police barracks for an interview. Trooper Navitsky and Trooper Jeffrey Gotwals interviewed Duvall in a kitchenette at the barracks for 93 minutes, from 5:27 p.m. to 7:00 p.m.[1]

At the beginning of the interview, Trooper Navitsky advised Duvall that he was not in custody, that he was free to leave and that he was under no obligation to answer any questions. Duvall acknowledged these rights. Trooper Navitsky then began to question Duvall regarding the allegations of sexual abuse. Trooper Navitsky informed Duvall, untruthfully, that preliminary results of a rape kit conducted on P.B. indicated recent sexual activity. Trooper Navitsky also insinuated that although he had not yet received the DNA test results, the results would likely indicate that Duvall had perpetrated the rape. Duvall repeatedly denied that he had raped P.B. Trooper Navitsky also indicated, again untruthfully, that the rape kit had proven the victim had been penetrated by a male penis, and he insinuated that Duvall's DNA had been detected. Duvall again insisted that he had not raped P.B. After vacillating under questioning, Duvall confessed that he had raped P.B.

After again informing Duvall that he was not in custody and that any statement he wished to make was voluntary, Trooper Navitsky handed

_____

[1] The transcript reveals that although Trooper Gotwals was present during the interview and asked Duvall some preliminary questions, Trooper Navitsky, in large part, singly conducted the interview.

Duvall a Noncustodial Statement Form. Duvall acknowledged on the written form that having sex with P.B. was a mistake and that it would never happen again. Trooper Navitsky then concluded the interview.

Duvall was later charged with Rape of a Mentally Disabled Person,[2] Involuntary Deviate Sexual Intercourse ("IDSI") of Person with Mental Disability,[3] Aggravated Indecent Assault,[4] Aggravated Indecent Assault of Person with Mental Disability,[5] Sexual Assault,[6] Indecent Assault,[7] and Indecent Assault of Person with Mental Disability.[8] Duvall filed a pretrial motion to suppress his confession, on the grounds that it was involuntary. Following a hearing, the trial court denied Duvall's motion, although it permitted Duvall to raise the issue of voluntariness before the jury at trial.

Following a jury trial, Duvall was convicted of Rape of a Mentally Disabled Person, IDSI of Person with Mental Disability, and Indecent Assault of a Person with Mental Disability. The trial court sentenced Duvall to an aggregate term of five to ten years' incarceration. Duvall filed a timely post-sentence motion, which the trial court denied. This timely appeal followed.

Duvall frames his issue on appeal as follows.

---

[2] 18 Pa.C.S.A. § 3121(a)(5).
[3] 18 Pa.C.S.A. § 3123(a)(5).
[4] 18 Pa.C.S.A. § 3125(a)(1).
[5] 18 Pa.C.S.A. § 3125(a)(6).
[6] 18 Pa.C.S.A. § 3124.1.
[7] 18 Pa.C.S.A. § 3126(a)(1).
[8] 18 Pa.C.S.A. § 3126(a)(6).

Did the lower court err in denying Duvall's motion to suppress as involuntary his confession during a non-custodial interrogation where (a) the trooper admitted that he repeatedly lied to Duvall about DNA and other evidence and suggested he would not go to jail if he admitted to having consensual sex with P.B.; (b) the trooper admitted that he lied for the purposes of "breaking down barriers"; (c) the trooper admitted that the confession did not include any corroboration beyond the act of sex; (d) Duvall had repeatedly denied having sex with P.B.; (e) the trooper indicated that he did not and a jury would not believe him; and (f) he gave in and confessed due to the unrelenting deception and manipulation?

Appellant's Brief at 12.

We review the denial of a motion to suppress evidence as follows.

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.

[W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

Further, [i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony.

*Commonwealth v. Houck*, 102 A.3d 443, 455 (Pa. Super. 2014) (internal citations and quotations omitted).

We note at the outset that Duvall concedes that he was not in custody when the interview took place. *See* Appellant's Brief at 15. However, "we must still examine the totality of the circumstances surrounding the

interrogation to determine if his confession was voluntary because a noncustodial interrogation might possibly in some situations, by virtue of some special circumstances, result in an involuntary confession." *Commonwealth v. Nester*, 709 A.2d 879, 882 (Pa. 1998) (internal quotes and citation omitted).

"When a defendant alleges that his … confession was involuntary, the question is not whether the defendant would have confessed without interrogation, but whether the interrogation was so manipulative or coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess." *Commonwealth v. Mitchell*, --- A.3d ---, 2014 WL 7150724, at *7 (Pa., filed Dec. 16 2014) (citation omitted). When assessing the voluntariness pursuant to the totality of the circumstances, we examine the following factors:

> the duration and means of the interrogation; the physical and psychological state of the accused; the conditions attendant to the detention; the attitude of the interrogator; and any and all other factors that could drain a person's ability to withstand suggestion and coercion.

*Nester*, 709 A.2d at 882 (citation omitted). The Commonwealth must prove by a preponderance of the evidence that the defendant confessed voluntarily. *See id*.

The totality of the circumstances here reveals that Duvall's confession was voluntary. It is uncontested that Duvall participated in the police interview on his own free will. *See Commonwealth v. Edmiston*, 634 A.2d 1078, 1087-88 (Pa. 1993) (overruled on other grounds) (defendant's

- 5 -

decision to voluntarily participate in interview at police station evidenced lack of coercion). Trooper Navitsky informed Duvall multiple times that he was not in custody and was free to leave at any time. *See Commonwealth v. Johnson*, 42 A.3d 1017, 1029 (Pa. 2012) (fact that officer repeatedly informed defendant of his rights and defendant's expressed understanding indicated lack of coercion). The interview commenced at 5:27 p.m., lasted just 93 minutes, and Duvall never indicated a desire to terminate the interview. *See Nester*, *supra*, 709 A.2d at 883 (interview lasting approximately one hour and fifteen minutes was not unduly long). Duvall acknowledged that Trooper Navitsky did not threaten him or otherwise make any impermissible inducements in exchange for Duvall's confession, and Duvall in fact recognized that the Trooper Navitsky was respectful and treated him fairly. *See Commonwealth v. Johnson*, 305 A.2d 5, 7 (Pa. 1973) (lack of improper inducements or promises by law enforcement factor in favor of admissibility). There is no evidence to suggest that Trooper Navitsky denied Duvall food or water or that he was otherwise mistreated in any way.

The heart of Duvall's argument is that Trooper Navitsky falsely insinuated that preliminary results of a rape kit conducted on P.B. indicated sexual contact had occurred and that the DNA test results would inevitably reveal that Duvall had raped the victim. However, we note that the Pennsylvania Supreme Court has found that the use of artifice or even intentional misrepresentations to obtain a confession is insufficient to make

an otherwise voluntary confession inadmissible "where the deception does not produce an untrustworthy confession or offend basic notions of fairness." *See Commonwealth v. Williams*, 640 A.2d 1251, 1259 (Pa. 1994) (claim that police falsely stated that they had located a gun sold by appellant which was of the same caliber used in the crime, was not sufficient to render a confession involuntary absent other coercive circumstances); *see also Commonwealth v. Jones*, 322 A.2d 119 (Pa. 1974) (finding confession was voluntary even though, after the defendant gave an initial exculpatory statement, the detective falsely claimed that a co-conspirator had implicated him).

Here, although Trooper Navitsky never affirmatively indicated that DNA test results positively identified Duvall as the perpetrator of the rape, this artifice was certainly insinuated and he did not disabuse Duvall of this notion. Nonetheless, as the totality of the circumstances detailed above otherwise evidence an almost total lack of coercive circumstances, we do not find this misrepresentation such that it was likely to cause an untrustworthy confession.

As further evidence of coercion, Duvall also points to Trooper Navitsky's insistence during the interview that he had sex with the victim, despite Duvall's initial denials. Duval seems not to grasp that the point of the interrogation process is to elicit a confession. This volleying back and forth is a standard part of that process and does not, in itself, give this Court cause for concern. "Not all psychological persuasion is prohibited." *Nester*,

*supra*, at 884 (citation omitted). It is only when interrogation becomes so "manipulative or coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess" that voluntariness concerns are implicated. *See Mitchell*, *supra*. Such is not the case here.

In summary, the circumstances of the confession, viewed in their totality, demonstrate that Duvall was not subject to overbearing physical or mental coercion such that would render his confession involuntary. We are therefore satisfied that the Commonwealth met its burden of proving by a preponderance of the evidence that Duvall's confession was voluntary. Accordingly, the trial court properly denied Duvall's suppression motion, and we affirm Duvall's judgment of sentence.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/9/2015