J-S49014-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CARSLIE WALI JONES, III, | |
| Appellant | No. 2031 MDA 2014 |

Appeal from the Judgment of Sentence October 27, 2014
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0002535-2013

BEFORE:  BENDER, P.J.E., ALLEN, J., and OLSON, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED SEPTEMBER 04, 2015**

Appellant, Carslie Wali Jones, III, appeals from the judgment of sentence of an aggregate term of 2½-12 years' incarceration, following his conviction of two counts of possession with intent to deliver a controlled substance (PWID).  Appellant presents two claims for our review.  First, Appellant contends the trial court erred when it dismissed his suppression motion as untimely.  Second, Appellant argues the trial court erred when, during *voir dire*, it *sua sponte* excused two jurors for cause without permitting Appellant the opportunity to rehabilitate them.  After careful review, we affirm.

For purposes of this appeal, a short summary of the pertinent facts related to Appellant's charges will suffice.  On May 16, 2013, Appellant was driving a blue Monte Carlo on the Pennsylvania Turnpike, near the

Bowmansville State Police Barracks, when he was stopped for speeding by Pennsylvania State Trooper Luke Straniere. Although Appellant had borrowed the vehicle from his cousin, Khareem Overton, Trooper Straniere determined that the vehicle's registration, insurance, and Appellant's license were otherwise in order. However, Appellant had a prior record of drug and firearm offenses, and the vehicle's owner was known to Trooper Straniere for prior drug-related activity. Consequently, Trooper Straniere asked Appellant to speak with him outside of the vehicle, and Appellant complied. After a brief interaction, Trooper Straniere chose not to cite Appellant, and instead issued a warning to him for speeding. Trooper Straniere noted that Appellant was very cooperative during this stage of their encounter and did not appear to be anxious.

After he was told he was free to go, Appellant began to return to his car. However, before he reentered the vehicle, Trooper Straniere called out Appellant's first name and Appellant returned to speak with the Trooper. Trooper Straniere then solicited Appellant's consent to search his vehicle, while reiterating that Appellant was free to go. Trooper Straniere testified that Appellant affirmatively consented, whereas Appellant testified that no consent was given. In the subsequent search of the vehicle, Trooper Straniere discovered, in the passenger's door, a pill bottle with the label removed. The bottle was later determined to contain 14 oxycodone pills. In the vehicle's trunk, Trooper Straniere discovered 700 bags of heroin. The aggregate weight of the heroin was later determined to be 17.1 grams.

On July 15, 2014, Appellant was convicted by a jury of two counts of PWID. The first count, PWID (heroin), was graded as a felony. The second, PWID (oxycodone), was graded as a misdemeanor. On October 27, 2014, the trial court sentenced Appellant to 2-10 years' incarceration for PWID (heroin), and to a consecutive term of 6 months' to 2 years' incarceration for PWID (oxycodone). Thus, Appellant is currently serving an aggregate sentence of 2½-12 years' incarceration.

Appellant filed a timely notice of appeal on November 26, 2014, and a timely court-ordered Pa.R.A.P. 1925(b) statement on December 23, 2014. The trial court issued its Rule 1925(a) opinion on January 13, 2015. Appellant now presents the following questions for our review:

> I. Where a Motion to Suppress was filed well in advance of trial, discovery was not complete until the date trial began, the Commonwealth was not opposed to the late-filed Motion, and the court held a full suppression hearing, did the interests of justice and [Appellant's] constitutional rights, pursuant to the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section Nine of the Constitution of the Commonwealth of Pennsylvania, require that the court issue a ruling on the merits of the motion, rather than dismiss it as untimely?
>
> II. Did the trial court err in *sua sponte* excusing jurors 94 and 131 for cause, over the objection of defense counsel, after refusing to permit defense counsel to ask any questions of the jurors regarding their affirmative answer to the question of whether they had any moral, religious or conscientious scruples against sitting as a juror?

Appellant's Brief, at 5.

Appellant's first claim concerns the denial of his motion to suppress the seized contraband, to which we apply the following standard of review:

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010) (citations and quotation marks omitted).

Instantly, the trial court denied Appellant's suppression motion as untimely. Pa.R.Crim.P 581 provides that the defense "may make a motion to the court to suppress any evidence alleged to have been obtained in violation of the defendant's rights." Pa.R.Crim.P 581(A). Rule 581(B) provides:

Unless the opportunity did not previously exist, or the interests of justice otherwise require, such motion shall be made only after a case has been returned to court and shall be contained in the omnibus pretrial motion set forth in Rule 578. If timely motion is not made hereunder, the issue of suppression of such evidence shall be deemed to be waived.

Pa.R.Crim.P 581(B).

The timeliness of a motion to suppress is governed by Rule 579, which sets forth the time for filing an omnibus pretrial motion pursuant to Rule 578. Rule 579(A) dictates that:

Except as otherwise provided in these rules, the omnibus pretrial motion for relief shall be filed and served within 30 days after arraignment, unless opportunity therefor did not exist, or the defendant or defense attorney, or the attorney for the Commonwealth, was not aware of the grounds for the motion, or unless the time for filing has been extended by the court for cause shown.

Pa.R.Crim.P. 579(A). Furthermore, the comment to Rule 579 instructs that "[c]ontemplated within the concept of cause shown is a finding by the court that discovery has not been completed, or a bill of particulars has not been furnished, or that contested motions for discovery or for a bill of particulars are pending." Pa.R.Crim.P. 579 (Comment).

Here, Appellant contends that trial court erred in denying his suppression motion as untimely because 1) the Commonwealth did not object to the timeliness of the motion; 2) the Commonwealth did not allege any prejudice due to the late-filed motion; and 3) discovery had not been completed. *See generally* Appellant's Brief, at 25. The trial court rejected each of these arguments, stating:

[Appellant]'s suppression motion was filed only after the second trial certification and nearly 9 months after [his] arraignment, rendering it 8 months late. [Appellant] never asked the Court for a filing extension under Rule 579(B). When directly asked why the late motion should not be denied as untimely, [Appellant] argued that the parties were trying to resolve the case to avoid the need for trial or a suppression motion; when that effort failed, the Commonwealth was aware of the basis for

- 5 -

the suppression motion; discovery was on-going when the motion was filed; no party suffered hardship by the late filing; and the motion raises a colorable claim. In other words, he offered absolutely no legitimate justification to excuse the delay. Notably, he did not contend that he could not have filed an earlier motion. Rather, his position amounted to an assertion that the interests of justice require the Court to consider the late filing because [Appellant] simply chose not to file it while he was negotiating with the Commonwealth and discovery remained on-going. I could not accept [Appellant]'s position. Doing so would have been tantamount to completely disregarding the clearly enumerated filing period and the explicit requirement that suppression issues shall be deemed waived if not timely asserted under circumstances in which such disregard would have been based solely on a party's preference to wait and see what may occur as the case unfolds instead of filing a known suppression issue within the mandated timeframe. This I will not do. The "interests of justice" did not support tolerance of such a late filing, especially in the context of the ordinary procedural circumstances of the case.

Trial Court Opinion (TCO), 1/13/15, at 12-13.

Contrary to the trial court's statement, Appellant did offer at least one potential justification for the late-filing of his suppression motion—a delay in the filing of discovery. The comment to Rule 579 clearly indicates that delays in discovery may provide a trial court with "cause shown" to justify extension of the 30-day filing deadline. Nevertheless, Appellant never filed for an extension of the filing deadline, and he fails to argue why the delayed discovery materials were pertinent to his untimely suppression motion. Indeed, Appellant concedes that the tardy discovery materials were "barred from trial because defense counsel had not had an opportunity to prepare to challenge it at trial." Appellant's Brief, at 25.

Thus, while Rule 579 contemplates that a delay in discovery may justify a late-filed suppression motion, not every delay in discovery will overcome the 30-day deadline. It is self-evident that an untimely suppression motion will not be excused when it does not seek the exclusion of the delayed discovery materials or where a defendant fails to plausibly allege that the delay in discovery hindered the defense's ability to raise the suppression claim. Here, Appellant's untimely suppression motion did not depend on the content of tardy discovery materials, nor did it seek their exclusion. Indeed, Appellant's untimely suppression motion was filed before the tardy discovery materials came to light, and those materials were excluded from trial in any event. Accordingly, we conclude that the trial court did not err when it denied Appellant's suppression motion as untimely and, therefore, waived. *See* Pa.R.Crim.P. 581(B) ("If timely motion is not made hereunder, the issue of suppression of such evidence shall be deemed to be waived.").

Next, Appellant claims the trial court erred when it *sua sponte* excused jurors 94 and 131 for cause. The jurors were excused due to their affirmative answers to the question, "Do any of you have any moral, religious[,] or conscientious scruples against sitting as a juror in this case and passing judgment upon the guilt or innocence of the defendant on the charges made?" N.T., 7/14/14, at 25. Appellant complains that defense counsel was not permitted to ask follow-up questions of the two excluded jurors to determine "whether the[ir] moral objection to serving on a jury

involved all jury service, or only those cases where, for example, the death penalty was being sought." Appellant's Brief, at 43. The trial court rejected defense counsel's request to potentially rehabilitate the jurors through further questioning, because the court did not want the prospective jurors to be "'treated as hostile witnesses' with further probing into their religious beliefs." TCO, at 22 (quoting **Commonwealth v. Johnson**, 305 A.2d 5, 8 (Pa. 1973)). In this regard, the trial court noted that:

> Both individuals were women wearing bonnets indicative of the Mennonite faith, and they unequivocally and credibly asserted their religious, moral, and/or conscientious beliefs that, by all appearances, were genuine. In Lancaster County, it is common for individuals of such faith to state that they have scruples against sitting in judgment of others as a juror and to answer the question[] at issue here in the affirmative.

TCO, at 22.

Our Supreme Court has "repeatedly stated that the purpose of *voir dire* is to ensure the empaneling of a fair and impartial jury capable of following the instructions on the law as provided by the trial court." **Commonwealth v. Paolello**, 665 A.2d 439, 450 (Pa. 1995). It is not the purpose of *voir dire* examination to provide a defendant "with a better basis upon which to utilize his peremptory challenges[.]" **Commonwealth v. England**, 375 A.2d 1292, 1295 (Pa. 1977). Moreover, "the right of peremptory challenge is not of itself a right to select but a right to reject jurors." **Commonwealth v. Brown**, 23 Pa. Super. 470, 498 (1903).

Pennsylvania Rule of Criminal Procedure 631 governs the *voir dire* of potential jurors. Rule 631(D) provides, in pertinent part, that: "The judge

may permit the defense and the prosecution to conduct the examination of prospective jurors or the judge may conduct the examination. In the latter event, the judge shall permit the defense and the prosecution to supplement the examination by such further inquiry as the judge deems proper." Pa.R.Crim.P. 631(D).

In *Johnson*, *supra*, the defense argued that it was "an abuse of discretion for the trial court to deny him the opportunity to examine prospective jurors as to their ability to accept and apply the law" after those prospective jurors indicated their fixed biases against psychiatrists, psychiatric testimony, and the use of alcoholic beverages. *Johnson*, 305 A.2d at 8. Our Supreme Court rejected this claim, holding:

> We do not believe that the trial court abused its discretion by refusing to allow defense counsel to probe into this area. The court had already specifically instructed every member of the panel that they must accept the law as given to them by the court and then apply that law to the facts. When asked, no member of the panel expressed any doubt as to his or her ability to accept and apply the law.
>
> We do not believe that prospective jurors should be treated as hostile witnesses; nor do we assume that they have failed to be completely candid with the court in responding to questions. Where the response has been unequivocal there is no basis for further inquiry.

*Id.* at 8-9.

In the instant case, before the objections of jurors 94 and 131 came to light, the trial court asked all prospective jurors whether they had "any doubts or reservations about [their] willingness to accept and apply the law as I instruct you in it." N.T., 7/14/14, at 26. No member of the jury pool

indicated any such doubt or reservations. *Id.* The trial court also asked the prospective jurors whether any of them had "any reason why, if you're selected to be a juror in this case, you could not give both the defendant and the Commonwealth a completely fair trial." *Id.* Again, no prospective jurors indicated an inability in that regard.

Thus, as was the case in *Johnson*, jurors 94 and 131 both indicated their willingness to act impartially and follow the trial court's instructions. Further examination of jurors 94 and 131 in such matters would likely place them in the position of being treated as hostile witnesses. Moreover, there was no reason for the trial court to doubt the religious and/or moral objections of jurors 94 and 131, if they are to be afforded, consistent with our nation's principles regarding religious freedom, the most rudimentary deference in regard to those beliefs.

Furthermore, Appellant has not presented a single case for our consideration wherein a criminal defendant was awarded a new trial after successfully challenging the exclusion of prospective jurors due to the jurors' religious or moral objection(s) to serving on a jury. Certainly, a *prosecutor's* use of peremptory challenges to excluded jurors of the same race as a defendant may warrant relief on equal protection grounds. *See Batson v.*

*Kentucky*, 476 U.S. 79 (1986). However, Appellant's claim is not remotely analogous to the issues that arose in *Batson*.[1]

The only case cited by Appellant to support his claim for relief is *Commonwealth v. Shirley*, 481 A.2d 1314 (Pa. Super. 1984), *overruled on other grounds*, *Commonwealth v. Anderson*, 550 A.2d 807 (Pa. Super. 1988). However, *Shirley* involved a situation whereby the defendant was forced to proceed with jury selection in the absence of counsel, who was trying another case, in a different county, on the day *voir dire* was scheduled. The *Shirley* Court held the trial court violated Shirley's Sixth Amendment right to counsel when it denied Shirley's request to postpose jury selection due to his defense counsel's absence, and by forcing him to represent himself during the selection process. Therefore, *Shirley* did not involve the scope of Appellant's right to question jurors during *voir dire* but, instead, the ancillary matter of a defendant's right to counsel during jury selection. Thus, the holding in *Shirley* has no bearing on the instant matter, nor does it provide any substantial persuasive authority.

---

[1] Plainly, *Batson* is distinguishable as the instant case implicates the religion, rather than the race, of the excluded jurors. However, the differences do not end there. *Batson* challenges typically involve a prosecutor's use of peremptory challenges, whereas here, the trial court acted *sua sponte* in excluding jurors 94 and 131. Moreover, *Batson* held that the nature of the equal protection violation was the purposeful exclusion of members of the *defendant's race* from the jury. Here, there is no evidence of record, nor even an allegation, that jurors 94 and 131 shared Appellant's religious beliefs.

The nature of Appellant's claim is that jurors 94 and 131 may have been unnecessarily excluded from his jury, and that he was denied an opportunity to rehabilitate them after they indicated their religious or moral objection to serving on a criminal jury. However, to this Court's knowledge, Appellant has neither a 'right' nor 'privilege' to *include* potential jurors of his choosing, apart from the protections that arise under **Batson**.[2] A defendant has a right to challenge and exclude potential jurors for the purpose of empaneling a fair and impartial jury. However, there is no corresponding right to select or rehabilitate jurors. **Brown**, **supra**.

Consequently, we find no basis for Appellant's claim of relief. We are not presented with an argument that Appellant's jury was potentially tainted by the presence of a biased juror, as the potential jurors at issue in this case did not ultimately serve on Appellant's jury. In any event, Appellant has not articulated how he was prejudiced by their absence, and this matter does not appear remotely analogous to those cases wherein the exclusion of jurors or a class of jurors has been recognized as violative of an established right. Rule 631 does permit Appellant to "supplement the examination [of potential jurors] by such further inquiry as the judge deems proper." Pa.R.Crim.P. 631(D). However, for the foregoing reasons, we find no basis

---

[2] To be clear, the right that arises under **Batson** is the right to not have jurors arbitrarily excluded on the basis that they are of the same race as the defendant. A right to 'not have excluded' a class of jurors is not at all synonymous with a right to 'include' specific jurors.

upon which to conclude that the trial court erred in deeming improper any further inquiry into the religious or moral objections of jurors 94 and 131. Thus, Appellant's second claim also lacks merit.

Judgment of sentence **affirmed**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/4/2015