J-S72021-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| NORMAN HARVEY, | : | |
| | : | |
| Appellant | : | No. 534 WDA 2014 |

Appeal from the PCRA Order Entered March 4, 2014,
In the Court of Common Pleas of Lawrence County,
Criminal Division, at No. CP-37-CR-0000954-2010.

BEFORE: BENDER, P.J.E., SHOGAN, J., and STRASSBURGER, J.*

MEMORANDUM BY SHOGAN, J.:                    **FILED FEBRUARY 25, 2015**

Appellant, Norman Harvey, appeals *pro se* from the order denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. We affirm.

In its opinion, the trial court summarized the factual history of this case as follows:

> [A]t approximately 9:30 P.M. on September 19, 2010, the New Castle Police Department received a telephone call that an individual was observed meddling with the front door of Mr. Greek Devasil's (hereinafter, "Mr. Devasil") jewelry store located in the city of New Castle. The store being closed at that time, Officer Richard Ryhal (hereinafter, "Officer Ryhal") of the New Castle Police Department telephoned the owner of the store, Mr. Devasil, on [Mr. Devasil's] cell phone and advised him of the [reason for the] telephone call. Mr. Devasil immediately checked the video surveillance of his store and reported that the video surveillance showed that an individual was at the front door of the store and was trying to gain entrance. Officer Ryhal

---

*Retired Senior Judge assigned to the Superior Court.

immediately terminated the telephone call and proceeded directly to Mr. Devasil's store, arriving at the store in approximately one minute.

Mr. Devasil observed [Appellant] at the front door of his store attempting to gain entrance. When Officer Ryhal arrived at the scene, [Appellant] began walking towards the police cruiser. At this time, Mr. Devasil came outside [of] the store and confirmed to Officer Ryhal that [Appellant] was the person he saw on the video surveillance and at his front door attempting to gain entrance. At the time of his arrest, [Appellant] was wearing a dark blue sweatshirt with the hood over his head, black pants, black shoes, and a camouflage mask over his face. Subsequent to placing [Appellant] under arrest, Officer Ryhal searched [Appellant's] person and retrieved a pair of pliers, a screwdriver, a penlight, and a pair of black gloves.

Trial Court Opinion, 11/14/12, at 3-4.

On January 20, 2012, a jury convicted Appellant of the crimes of criminal attempt to commit burglary, possession of an instrument of crime, and loitering and prowling at night time. On April 30, 2012, the trial court sentenced Appellant to serve an aggregate term of incarceration of four and one-half to fourteen years. Appellant filed a timely post-sentence motion, which was denied by operation of law. On March 12, 2013, a panel of this Court affirmed Appellant's judgment of sentence. *Commonwealth v. Harvey*, 1462 WDA 2012, 69 A.3d 1291 (Pa. Super. filed March 12, 2013) (unpublished memorandum).

Thereafter, Appellant filed, *pro se*, the instant PCRA petition. The PCRA court then appointed counsel to represent Appellant and scheduled a PCRA hearing. Counsel entered his appearance on behalf of Appellant on

May 14, 2013. The PCRA court held a hearing on December 11, 2013. Further, the PCRA court permitted counsel to subsequently file a PCRA brief on behalf of Appellant. In an order and opinion dated March 4, 2014, the PCRA court denied Appellant's PCRA petition. Appellant then filed this timely appeal *pro se*. On April 10, 2014, the PCRA court directed Appellant to comply with Pa.R.A.P. 1925(b). Appellant filed, *pro se*, a compliant Pa.R.A.P. 1925(b) statement on April 21, 2014. On May 27, 2014, the PCRA court issued an opinion pursuant to Pa.R.A.P. 1925(a).

Appointed counsel filed a motion to withdraw as counsel with the PCRA court on May 28, 2014, stating that Appellant desired to proceed on appeal *pro se*. In addition, Appellant filed, *pro se*, a handwritten letter dated June 9, 2014, addressed to a deputy prothonotary of this Court entitled "Application for Stay," in which Appellant expressed his interest in proceeding *pro se*. Appellant also filed with this Court a "Motion for Extension of Time to File Brief," dated June 15, 2014. In a *per curiam* order dated June 26, 2014, this Court remanded the case to the lower court for a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998), suspended the briefing schedule, and dismissed as moot Appellant's motion for extension of time to file brief.

In an order filed August 5, 2014, the PCRA court indicated that, upon remand, it conducted a **Grazier** hearing and stated that it found "Appellant

is of the mental and intellectual capacity to understand his request, his rights and his responsibilities for proceeding *pro se* and knowingly, voluntarily and intelligently waives his right to representation by counsel and reaffirms his desire to proceed in his appeal *pro se*," and determined that Appellant was permitted to proceed *pro se*. Order, 8/5/14, at 1-2. The order further appointed stand-by counsel to offer Appellant assistance in securing materials of record necessary for the PCRA appeal. **Id**. at 2.

Appellant now presents the following issues for our review, which we reproduce *verbatim*:

> 1. Was the PCRS courts determination that all of the appellants claims have been fully litigated and waived clearly erroneous ?
>
> 2. Was the PCRA courts determination that trial counsel was not ineffective, clearly erroneous?.
>
> 3. Was the PCRA courts determination that appellant was not prejudiced by the action and/or inaction of defense counsel clearly erroneous?.
>
> 4. Was the PCRA courts determination unsupported by the documented record ( i.e. PCRA petition, PCRA hearing ) clearly erroneous,
>
> 5. Was the PCRA courts determination that appellant is barred from seeking Post-conviction Collateral Relief, clearly erroneous,
>
> 6. Did the trial court abuse its discretion in failing to disclose to appellant relationship between juror # 10 and the court?

Appellant's Brief at 4.

Our standard of review of an order denying PCRA relief is whether the record supports the PCRA court's determination and whether the PCRA court's determination is free of legal error. **Commonwealth v. Phillips**, 31 A.3d 317, 319 (Pa. Super. 2011) (citing **Commonwealth v. Berry**, 877 A.2d 479, 482 (Pa. Super. 2005)). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. **Phillips**, 31 A.3d at 319 (citing **Commonwealth v. Carr**, 768 A.2d 1164, 1166 (Pa. Super. 2001)).

In his first issue, Appellant argues that he is entitled to PCRA relief because the PCRA court erred in denying his PCRA petition without ruling on the merits of his claim of trial counsel ineffective assistance that was raised in his *pro se* PCRA petition and presented during his PCRA hearing on December 11, 2013.[1] Appellant's Brief at 8. Essentially, Appellant claims

---

[1] We observe that Appellant, in the argument section of his *pro se* brief, includes rambling and repetitive discussions that are intermingled among the various issues he has presented. "Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant." **Commonwealth v. Adams**, 882 A.2d 496, 498 (Pa. Super. 2005) (citing **Commonwealth v. Lyons**, 833 A.2d 245, 252 (Pa. Super. 2003)). "To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing." **Adams**, 882 A.2d at 498 (citing **Commonwealth v. Rivera**, 685 A.2d 1011 (Pa. Super. 1996)). Therefore, we will limit our review of each issue to the topic as presented under each issue heading. We further note that the headings for each issue in the argument section of Appellant's brief to this Court are basically identical to the issues presented in Appellant's Pa.R.A.P. 1925(b) statement.

the PCRA court, in its order and opinion dated March 4, 2014, erred in addressing only the claims presented by appointed counsel in PCRA counsel's supplemental PCRA brief and developed at the PCRA hearing, and in failing to address the claims of ineffective assistance of trial counsel with regard to jury selection that Appellant presented in his *pro se* PCRA petition.

In **Commonwealth v. Jette**, 23 A.3d 1032 (Pa. 2011), our Supreme Court reiterated its "long-standing policy that precludes hybrid representation." **Id**. at 1036. While **Jette** involved a counseled appellant attempting to proceed *pro se* on appeal, our Supreme Court has also declared that "there is no constitutional right to hybrid representation . . . at trial," **Commonwealth v. Ellis**, 626 A.2d 1137, 1139 (Pa. 1993), or during PCRA proceedings. **See Commonwealth v. Pursell**, 724 A.2d 293, 302 (Pa. 1999) (applying **Ellis** rationale prohibiting hybrid representation to PCRA proceedings, stating "[w]e will not require courts considering PCRA petitions to struggle through the *pro se* filings of defendants when qualified counsel represent those defendants"). Accordingly, to the extent that Appellant asserts the PCRA court erred in failing to address Appellant's *pro se* claims in its opinion dated March 4, 2014, we conclude that this issue lacks merit.[2]

---

[2] We note, as will be discussed *infra*, the PCRA court did address in detail Appellant's various *pro se* claims pertaining to jury selection in its Pa.R.A.P. 1925(a) opinion dated May 27, 2014.

In his second issue, Appellant argues that he entitled to PCRA relief because the PCRA court erred in dismissing his PCRA petition without ruling upon the issues of "abuse of discretion" that occurred when the trial court failed to ensure that no bias or partiality was present in the jury, *i.e.*, Appellant's right to an impartial jury was violated. Appellant's Brief at 13. Within this issue, Appellant makes a bald allegation that one of the jurors seated in his trial, juror number ten, perjured herself when she failed to disclose her association with the trial judge during general *voir dire*, and that his rights were violated because he was not present when the trial judge disclosed the association during individual *voir dire*.

A criminal defendant's right to an impartial jury is explicitly granted by Article 1, Section 9 of the Pennsylvania Constitution and the Sixth Amendment of the United States Constitution. Our Supreme Court has long stated that "the purpose of *voir dire* is to empanel a fair and impartial jury, not to empanel a jury sympathetic to positions or beliefs of either party." ***Commonwealth v. Paolello***, 665 A.2d 439, 451 (Pa. 1995). As the Pennsylvania Supreme Court explained in ***Commonwealth v. Johnson***, 305 A.2d 5 (Pa. 1973):

> the purpose of the *voir dire* examination is to disclose qualifications or lack of qualifications of a juror and in particular to determine whether a juror has formed a fixed opinion as to the accused's guilt or innocence. The law recognizes that it would be unrealistic to expect jurors to be free from all prejudices, a failing common to all human beings. We can only

attempt to have them put aside those prejudices in the performance of their duty, the determination of guilt or innocence. We therefore do not expect a tabula rosa but merely a mind sufficiently conscious of its sworn responsibility and willing to attempt to reach a decision solely on the facts presented, assiduously avoiding the influences of irrelevant factors.

*Id*. at 8.

With these concepts in mind, we further observe that the manner in which *voir dire* will be conducted is left to the discretion of the trial court. **Commonwealth v. Moore**, 756 A.2d 64, 65 (Pa. Super. 2000). In Pennsylvania, the trial judge may determine whether to question the venire persons collectively or individually. **Commonwealth v. Hathaway**, 500 A.2d 443, 448 (Pa. Super. 1985) (citing to former Pa.R.Crim.P. 1106, now Pa.R.Crim.P. 631). **See also Commonwealth v. DeHart**, 516 A.2d 656, 662 (Pa. 1986) (approving, in capital case, group questioning of jurors regarding preliminary matters prior to individual *voir dire*). However, "a complete denial of the right to an examination of jurors to show bias or prejudice is a palpable abuse of discretion and entitles the defendant to a new trial." **Commonwealth v. Holland**, 444 A.2d 1179, 1180 (Pa. Super. 1982) (quoting **Commonwealth v. Foster**, 293 A.2d 94 (Pa. Super. 1972)).

Also, "[c]laims of impartiality by prospective jurors are subject to scrutiny for credibility and reliability as is any testimony, and the judgment

of the trial court is necessarily accorded great weight." **Commonwealth v. Ellison**, 902 A.2d 419, 424 (Pa. 2006) (quoting **Commonwealth v. Bachert**, 453 A.2d 931, 937 (Pa. 1982)). Decisions of the trial judge concerning *voir dire* will therefore not be reversed in the absence of palpable error. **Id**. As a general rule, we have consistently explained that an abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. **Commonwealth v. Griffin**, 804 A.2d 1, 7, 12 (Pa. Super. 2002).

Moreover, we have reiterated that "[p]ursuant to Article I, § 9 of the Pennsylvania Constitution, and the Sixth Amendment of the federal constitution as applied to the states via the Fourteenth Amendment due process clause, defendants have the right to be present during their criminal trial." **Commonwealth v. Kelly**, 78 A.3d 1136, 1141 (Pa. Super. 2013), *appeal denied*, 91 A.3d 161 (Pa. 2014) (citations omitted). Likewise, our Supreme Court has expressed that "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." **Commonwealth v. Hunsberger**, 58 A.3d 32, 37 (Pa. 2012) (quoting **Kentucky v. Stincer**, 482 U.S. 730, 745 (1987). The United States

Supreme Court "has explicitly affirmed that *voir dire* is a critical stage of the criminal proceeding, during which the defendant has a constitutional right to be present." **Hunsberger**, 58 A.3d at 37 (citing **Gomez v. United States**, 490 U.S. 858, 873 (1989)). **See also** Pa.R.Crim.P. 602(A) ("The defendant shall be present at every stage of the trial including the impaneling of the jury[.]"). "However, like the [Supreme Court of the United States, our Supreme] Court has recognized that the right to be present in the courtroom during one's [non-capital] trial is not absolute." **Hunsberger**, 58 A.3d at 38. Indeed, a "defendant's presence in chambers and at sidebar is not required where he is represented by counsel." **Id**. at 38 (quoting **Commonwealth v. Boyle**, 447 A.2d 250 (Pa. 1982)).

In addressing Appellant's claim, the PCRA court offered the following analysis:

> In the instant case, [Appellant] was in the courtroom while the Court and counsel conducted individual *voir dire*. The fact that [Appellant] was outside the earshot of *voir dire* alone is insufficient to establish prejudice, which would entitle him to relief. Notably, [Appellant] did not request to be present during individual *voir dire*. The Court in Hunsberger found that this Commonwealth recognizes "that a defendant's right to participate in *voir dire* may be satisfied through procedures that both ensure the defendant's right to choose and be tried by a fair and impartial jury, yet make accommodations for trial court efficiency and safety, and the comfort protection, and respect for the jury pool." [**Hunsberger**, 58 A.3d] at 40. [Appellant] in the instant case did not have an absolute right to be present during individual *voir dire*. [Appellant's] trial counsel was present and participated in *voir dire* on his behalf in his best interest. [Appellant] has not established that he suffered any violation of

-10-

his constitutional rights as a result of the *voir dire* process which would give him any arguable merit to his ineffectiveness claim. As a result, the Court did not err in denying [Appellant's] PCRA Petition on this basis.

\* \* \*

During the PCRA hearing, [Appellant's] [PCRA] counsel questioned his trial counsel about whether he disclosed [juror number ten's] relationship with the Court. Trial counsel responded that he did not have an opportunity to do so. Trial counsel explained that he decides "what is in the best interests of the case and how [he] feel[s] about a certain juror or what my knowledge is of a juror." N.T. pg. 21. Trial counsel recalled that he did not believe [juror number ten] had any bias that would prejudice [Appellant] if she were chosen to be a juror. Ultimately, [Appellant's] trial counsel concluded that [juror number ten] could be an impartial juror. Neither [juror number ten] nor the Court believed that this relationship would hinder [juror number ten's] ability to be a fair and impartial juror. As a result, [Appellant's] rights were not violated and the Court did not err in denying his PCRA Petition in this regard.

PCRA Court Opinion, 5/27/14, at 3-5. We agree with the PCRA court that there is no merit to Appellant's allegations pertaining to juror number ten.

Our review of the record reflects that at the beginning of *voir dire*, the trial judge conducted group questioning, during which the prospective jurors were asked to rise from their seats if any of the questions pertained to them. During the group *voir dire*, the trial judge posed a question to the jury panel asking whether potential jurors had particular types of associations with the various parties and the court, and the following question was posed by the trial judge to the potential jurors:

Are any of you related by blood or marriage to **or do you have any close association** with [Appellant], defense counsel, the Assistant District Attorney or Officer Ryhal or to me, Judge Piccione? If so, please rise.

Let the record reflect no one has risen.

N.T., 1/17/12, at 26-27 (emphasis added).

To support his allegation that juror number ten committed perjury, Appellant relies upon the fact that juror number ten did not rise when presented with the *voir dire* question from the judge. However, there is no indication anywhere in the record to reflect that the trial judge and juror number ten had a "close association" that would have required her to rise from her seat in response to the question.

To combat the lack of evidence to support that a "close association" existed between the trial judge and juror number ten, Appellant relies upon the following from the subsequent individual *voir dire* of juror number ten:

THE COURT: Next one is [juror number ten], who I know she's a master gardener. [Juror number ten].

([Juror number ten] enters at this time.)

THE COURT: [Juror number ten].

[JUROR NUMBER TEN]: Hi.

THE COURT: Please have a seat. I have already told them you're a master gardener who I look up to and we know each other.

[JUROR NUMBER TEN]: Okay.

N.T., 1/17/12, at 186. The simple fact that the trial judge acknowledged that he "looked up to" juror number ten as "a master gardener" and informed counsel that they knew each other does not support the notion that juror number ten and the trial judge had a "close relationship" as mentioned during the group *voir dire*. Moreover, the fact that juror number ten was known by the trial judge as a master gardener does not support the suggestion that she was not able to act as a fair and impartial juror.

The record further reflects that during individual *voir dire* juror number ten offered a candid discussion pertaining to the death of her two brothers, one of whom was killed by a police officer, both over twenty-five years before Appellant's trial, and her ability to remain impartial as a juror. N.T., 1/17/12, at 187-189. Juror ten was also forthright concerning her experience as a youth development teacher, the fact that her brother-in-law was a retired constable, and her ability to not allow those facts to affect her impartiality. *Id*. at 189-190. At the conclusion of individual *voir dire* for juror number ten, the following transpired:

> THE COURT: [Juror number ten], if you're selected as a trial juror, can you assure the Court that despite what you disclosed to the Court and revealed that you could set those experiences aside and if selected as a trial juror that you could fairly and impartially determine the innocence or guilt of [Appellant] based solely upon the evidence that's presented, the reasonable inferences that could be drawn from the evidence and the law as explained to you?
>
> [JUROR NUMBER TEN]: Yes, I could.

-13-

*Id*. at 190.

At Appellant's PCRA hearing, trial counsel testified regarding juror selection, and the following transpired:

> [PCRA COUNSEL]: All right. The information about [juror number ten], because it was brought out in the jury selection room, was -- did you ever make that known to [Appellant] once you exited the room?
>
> [TRIAL COUNSEL]: Not to my recollection, no. I -- I thought [juror number ten] was going to be a very good juror in terms of our case, and I knew her family background, I knew her -- the Robinson family. It seemed to me that we would want her on the jury. Even though she -- she was -- she had some familiarity with Judge Piccione, I didn't see that as a reason to cause any red flags or anything of that nature. She was apparently in the master gardening program, and as Judge Piccione indicated, he was also in that program. I didn't see that as anything that would raise an issue for striking her. Again, I felt that she would be a favorable juror to have, and that was my opinion.

N.T., 12/11/13, at 19-20.

The record reveals no evidence indicating an inability of juror number ten to be fair or impartial, or an abuse of discretion by the PCRA court in handling this matter. Our careful review of the testimony reveals no record of prejudice in the selected jurors that would compel this Court to conclude that the PCRA court erred in addressing this issue. Hence, we conclude that Appellant's claim lacks merit.

In his third issue, Appellant argues that he is entitled to PCRA relief because the PCRA court erred in denying Appellant's PCRA petition without

ruling upon the initial issues of ineffective assistance of counsel that occurred by trial counsel's "failure to protect" Appellant's due process rights during *voir dire*. Appellant's Brief at 19. Essentially, Appellant is arguing that his trial counsel was ineffective in handling the matter concerning juror number ten.

In order to succeed on a claim of ineffective assistance of counsel, an appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's performance lacked a reasonable basis; and (3) that the ineffectiveness of counsel caused the appellant prejudice. *Commonwealth v. Pierce*, 786 A.2d 203, 213 (Pa. 2001).

We have explained that trial counsel cannot be deemed ineffective for failing to pursue a meritless claim. *Commonwealth v. Loner*, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*). Moreover, with regard to the second prong, we have reiterated that trial counsel's approach must be "so unreasonable that no competent lawyer would have chosen it." *Commonwealth v. Ervin*, 766 A.2d 859, 862-863 (Pa. Super. 2000) (quoting *Commonwealth v. Miller*, 431 A.2d 233 (Pa. 1981)).

Our Supreme Court has long defined "reasonableness" as follows:

> Our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable* basis designed to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the

-15-

alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decision had any reasonable basis.

***Commonwealth v. Pierce***, 527 A.2d 973, 975 (Pa. 1987) (quoting ***Commonwealth ex rel. Washington v. Maroney***, 235 A.2d 349 (Pa. 1967)) (emphasis in original).

In addition, we are mindful that prejudice requires proof that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. ***Pierce***, 786 A.2d at 213. "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." ***Commonwealth v. Daniels***, 963 A.2d 409, 419 (Pa. 2009) (citing ***Commonwealth v. Sneed***, 899 A.2d 1067 (Pa. 2006)). Thus, when it is clear that a petitioner has failed to meet the prejudice prong of an ineffective assistance of counsel claim, the claim may be disposed of on that basis alone, without a determination of whether the first two prongs have been met. ***Commonwealth v. Baker***, 880 A.2d 654, 656 (Pa. Super. 2005).

It is presumed that the petitioner's counsel was effective, unless the petitioner proves otherwise. ***Commonwealth v. Williams***, 732 A.2d 1167, 1177 (Pa. 1999). We are bound by the PCRA court's credibility determinations where there is support for them in the record. ***Commonwealth v. Battle***, 883 A.2d 641, 648 (Pa. Super. 2005) (citing ***Commonwealth v. Abu-Jamal***, 720 A.2d 79 (Pa. 1998)).

Furthermore, claims of ineffective assistance of counsel are not self-proving. ***Commonwealth v. Wharton***, 811 A.2d 978, 986 (Pa. 2002). "[A] post-conviction petitioner must, at a minimum, present argumentation relative to each layer of ineffective assistance, on all three prongs of the ineffectiveness standard...." ***Commonwealth v. D'Amato***, 856 A.2d 806, 812 (Pa. 2004). "[A]n underdeveloped argument, which fails to meaningfully discuss and apply the standard governing the review of ineffectiveness claims, simply does not satisfy Appellant's burden of establishing that he is entitled to relief." ***Commonwealth v. Bracey***, 795 A.2d 935, 940 n.4 (Pa. 2001).

Even if we were to presume that in his appellate brief to this Court Appellant has presented proper argumentation pertaining to the first two prongs of the ineffectiveness standard, we must conclude that Appellant has offered no relevant discussion addressing the third prong, *i.e.*, that the alleged ineffectiveness of counsel caused Appellant prejudice. Indeed, Appellant has failed to establish that, but for trial counsel's alleged error during *voir dire*, the outcome of the proceeding would have been different. ***Pierce***, 786 A.2d at 213. As we stated in ***Baker***, when a petitioner has failed to meet the prejudice prong of an ineffective assistance of counsel claim, the claim may be disposed of on that basis alone, without a determination of whether the first two prongs have been met. ***Baker***, 880

-17-

A.2d at 656. Accordingly, Appellant's underdeveloped argument, which fails to meaningfully discuss the prejudice prong governing the review of ineffectiveness claims, does not satisfy the burden of establishing that Appellant is entitled to relief. **Bracey**, 795 A.2d at 940 n.4. Thus, this claim does not warrant relief.

In his fourth issue, Appellant argues he is entitled to PCRA relief because the PCRA court erred by not addressing all of his issues raised at the PCRA hearing. Appellant's Brief at 22. Within this argument, Appellant presents two issues: (1) that the PCRA court erred in failing to address the issues raised in his *pro se* PCRA petition, and (2) in filing a supplemental brief with the PCRA court, PCRA counsel was ineffective for abandoning issues raised in Appellant's *pro se* PCRA petition.

At the outset, we note that we addressed the initial portion of Appellant's argument in response to his first issue raised. Indeed, we concluded, *supra*, that Appellant's claim that the PCRA court erred in failing to address the issues raised in his *pro se* PCRA petition lack merit. For the reasons stated above, the claim continues to lack merit.

In addition, in the argument portion of his appellate brief addressing issue number four, Appellant attempts to present a claim that his PCRA counsel was ineffective for failing to present the issue pertaining to juror number ten in the supplemental brief filed with the PCRA court after the

PCRA hearing. Appellant's Brief at 23-25. However, it is well-settled that claims of ineffectiveness of PCRA counsel must be raised before the PCRA court prior to the filing of an appeal. *See Commonwealth v. Ford*, 44 A.3d 1190, 1200, 1201 (Pa. Super. 2012) (stating that "issues of PCRA counsel effectiveness must be raised in a serial PCRA petition or in response to a notice of dismissal before the PCRA court" and holding that "absent recognition of a constitutional right to effective collateral review counsel, claims of PCRA counsel ineffectiveness cannot be raised for the first time after a notice of appeal has been taken from the underlying PCRA matter"); *Commonwealth v. Henkel*, 90 A.3d 16, 20, 30 (Pa. Super. 2014) (*en banc*), *appeal denied*, 101 A.3d 785 (Pa. 2014) (discussing Supreme Court cases that preclude raising PCRA counsel ineffectiveness claims for the first time on appeal and finding waived the appellant's claims of PCRA counsel's ineffectiveness that were raised for the first time in a Pa.R.A.P. 1925(b) statement filed after his notice of appeal). *See also* Pa.R.A.P. 302(a) (stating that issues cannot be raised for the first time on appeal). Accordingly, we are constrained to conclude that Appellant has waived his claim of PCRA counsel's alleged ineffective assistance by not raising it before the PCRA court. Hence, we cannot address this claim on appeal.

In his fifth issue, Appellant argues that he is entitled to PCRA relief because the PCRA court erred in failing to rule on the issues of "actual bias"

and "prejudice" pertaining to juror number ten's association with the trial court. Appellant's Brief at 26. Again, Appellant claims that juror number ten "abjured" her oath by failing to disclose her connection to the trial court during group *voir dire*. As we discussed above in our review of issue number two, the allegation that juror number ten committed perjury during group *voir dire* lacks merit. Contrary to Appellant's allegations, there is no indication in the record to reflect that the trial judge and juror number ten had a "close association" that would have required a response from juror number ten during the group *voir dire*. Therefore, for the reasons cited above, we again conclude that this claim lacks merit.

In his sixth issue, Appellant argues that he is "entitled to PCRA relief under the umbrella of ineffective assistance of counsel for the 'serial' failure of said counsels to raise **Brady**[3] and prosecutorial misconduct issues" of the Assistant District Attorney's suppression of juror number ten's association with the trial court. Appellant's Brief at 29. Appellant contends that this was favorable material evidence, and he was prejudiced by its omission.

We observe that Appellant's reliance upon **Brady** is misplaced. "In **Brady**, the United States Supreme Court held that 'the suppression by the prosecution of evidence favorable to an accused upon request violates due

---

[3] **Brady v. Maryland**, 373 U.S. 83 (1963).

process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *Commonwealth v. Lambert*, 884 A.2d 848, 853 (Pa. 2005) (quoting *Brady*, 373 U.S. at 87). "The duty to disclose under *Brady* encompasses impeachment evidence as well as exculpatory evidence." *Commonwealth v. Simpson*, 66 A.3d 253, 266 (Pa. 2013). "On the question of materiality, the Court has noted that such evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Commonwealth v. Burke*, 781 A.2d 1136, 1141 (Pa. 2001) (quoting *Strickler v. Greene*, 527 U.S. 263, 281 (1999)).

We fail to see how the fact that juror number ten and the trial judge knew each other prior to trial amounts to *Brady* material. This fact is not material either to Appellant's guilt or to punishment. Nor can it be said that the connection between juror number ten and the trial judge was impeachment or exculpatory evidence such that it amounted to *Brady* material. Furthermore, there is no evidence to suggest that the prosecution failed to disclose to the defense any connection between juror number ten and the trial judge. Accordingly, Appellant's claim lacks merit.

Moreover, even if we were to presume for the sake of argument that the connection between juror number ten and the trial judge amounted to

material evidence such that **Brady** would be implicated, we note that defense counsel was made aware of the connection prior to trial. As our Supreme Court has explained, a **Brady** claim will fail if trial counsel is aware of the **Brady** material. **Simpson**, 66 A.3d at 268 n.20. Here, the record reflects that during individual *voir dire*, the trial judge informed both parties of his connection with juror number ten. For this reason as well, the claim lacks merit.[4]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/25/2015

---

[4] To the extent that Appellant attempts to argue that prior counsel were ineffective in this regard, we note that Appellant has completely failed to present the appropriate three-prong analysis necessary to secure such a claim. Appellant's Brief at 29-32. Thus, we decline to address the merits of an ineffective assistance of counsel issue pertaining to the alleged **Brady** material.