J-S47043-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
           :             PENNSYLVANIA
           :
     v.             :
           :
           :
TARIQ MAHMUD         :
           :
     Appellant    :   No. 23 EDA 2023

Appeal from the PCRA Order Entered November 29, 2022
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0007123-2013

BEFORE:   STABILE, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:         **FILED FEBRUARY 20, 2024**

Appellant, Tariq Mahmud, appeals *pro se* from the order entered in the Court of Common Pleas of Delaware County dismissing his first petition filed pursuant to the Post Conviction Relief Act ("PCRA"). **See** 42 Pa.C.S.A. §§ 9541-9546. We affirm.

In our non-precedential decision affirming judgment of sentence, this Court summarized the underlying facts of the Appellant's case:

> Appellant's conviction arises from the killing of Jason McClay at a Rite Aid store in the City of Chester, where McClay was a manager. The Commonwealth alleged the following. In August and September 2013, Appellant was employed as loss prevention agent at the Rite Aid store. Appellant, Ashaniere White, and Christopher Parks planned to rob the Rite Aid store. Appellant told White and Parks about how much money was kept in the store's safe, who was working, and about blind spots in the store's video surveillance system. Appellant warned them not to try to rob the

---

[*] Former Justice specially assigned to the Superior Court.

store when McClay was working, because he was a former marine who would fight back.

On August 19, 2013, White and Parks robbed the Rite Aid store when McClay was not on duty. On August 26 and September 4, 2013, White and Parks again attempted to rob the store, but abandoned those plans when employees recognized White.

Appellant, White, and Parks thereafter sought the assistance of new people to rob the store, and they brought David Wiggins into their planning. Wiggins wanted another individual, Rita Pultro, to participate as well. The group planned a robbery for September 18, 2013, but postponed it until September 19, 2013.

On September 19, 2013, McClay worked the day shift at the Rite Aid store and stayed for the evening shift due to the unavailability of another manager, Serita Cottman. Appellant called out from work that day. At approximately 9:45 p.m., an employee saw a white female, later identified as Pultro, and a black male, later identified as Wiggins, enter the store. Pultro retrieved a light bulb and took it to the counter. When the employee told her the amount due, Pultro complained that it was too expensive, placed the item back on the shelf, and asked to see the manager. McClay went back to the aisle, and he and Pultro began discussing lightbulbs. Wiggins then grabbed McClay and told him to take him to the safe. Wiggins and McClay began wrestling. Pultro shot McClay at close range at the base of his neck and killed him. Wiggins and Pultro fled from the store and left the scene in a vehicle driven by Parks.

The investigation into the shooting revealed that Wiggins left a palm print in the Rite Aid store. Investigators obtained a photograph of Wiggins and showed it to two employees, and they both identified Wiggins as one of the robbers. Wiggins was arrested on September 21, 2013, and admitted his role in the robbery. Pultro was arrested on September 22, 2013. Appellant was interviewed by police on September 22, 2013, and turned over his cell phone that day. Appellant was arrested on October 2, 2013. Parks and White were also arrested. Parks and White subsequently entered guilty pleas to third-degree murder in exchange for their cooperation, and the Commonwealth dropped the charges of second-degree murder against them.

> Appellant, Pultro, and Wiggins proceeded to a joint jury trial for the September 19, 2013, robbery and killing of McClay.  Parks and White testified against them.  The Commonwealth also introduced numerous text messages between the parties.  The jury found Appellant guilty of second-degree murder, robbery, and conspiracy.  The trial court sentenced Appellant to life imprisonment on May 1, 2015.

*Commonwealth v. Mahmud*, No. 1589 EDA 2015, at **1–2 (Pa. Super. 2017) (non-precedential decision).

Appellant filed a counseled direct appeal, and this Court affirmed judgment of sentence.  *Id*.  Subsequently, by order of July 30, 2019, the Pennsylvania Supreme Court denied Appellant's counseled petition of allowance of appeal.  *See* No. 97 MAL 2019.

On October 25, 2019, Appellant filed *pro se* a timely first PCRA petition asserting seven issues alleging ineffective assistance of prior counsel.[1]  The

_____

[1] Appellant's *pro se* petition raised seven claims of ineffective assistance of trial counsel (verbatim):

1. Trial counsel was ineffective for withdrawing motion to suppress the evidence of prior robberies, that was granted.
2. Failure to call alibi witnesses.
3. Failure to file a motion to sever the trial or a motion for change of venue.
4. Failure to investigate the camera footage of the interrogation room at the Chester Police Station
5. Counsel was ineffective for giving apellent [sic] bad advice not to take the stand in his own defense.
6. Appellant's counsel was ineffective for failing to raise the issue that the trial court erred when it denied the defense motion to strike prospective juror number "56" for cause since that panelist's wife was the victim of a similar crime and he could not state with certainty that he could be fair and impartial.
7. Trial counsel errors cumulatively together prejudiced petitioner.

PCRA court appointed counsel, who on September 20, 2022, filed an application to withdraw his appearance pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988) and an accompanying "no-merit" letter pursuant to *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) addressing in turn the seven issues raised in Appellant's PCRA petition and finding each issue to be devoid of merit. *See* PCRA Counsel's No-Merit Letter, 9/20/22, at 3-8.

On September 23, 2022, the PCRA Court filed a Pa.R.Crim.P. 907 "Notice of Intent to Dismiss" Appellant's PCRA petition without a hearing along with a separate order granting PCRA counsel's motion to withdraw. Appellant filed a *pro se* response on October 18, 2022, in the form of a "Motion for Extension of Time" requesting five additional days in which to file a response to the PCRA court's Rule 907 Notice to Dismiss. On October 19, 2022, The PCRA court granted Appellant's *pro se* motion for an extension of time and set a date of November 18, 2022, by which Appellant's response would be due.

On October 21, 2022, Appellant filed a 27-page *pro se* response in which he offered argument in support of his ineffectiveness issues. On November 29, 2022, upon consideration of Appellant's PCRA petition, appointed counsel's *Finley* letter, and Appellant's response to the *Finley* Letter and the Rule 907 Notice to Dismiss, the PCRA court dismissed Appellant's PCRA petition. On December 21, 2022, Appellant filed simultaneously both his motion for reconsideration and his notice of appeal. The Court entered an order on the denying the motion for reconsideration and a second order directing Appellant

to file a court-ordered Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal.

Appellant has raised and briefed the following issues for this Court's consideration:

1. PCRA Court erred when it dismissed [Appellant's] PCRA, claiming that it was meritless and untimely.

2. PCRA Counsel was ineffective for failing to pursue [Appellant's] *pro se* issue; namely that trial counsel was ineffective for withdrawing the motion to suppress the evidence of [Appellant's] alleged prior bad acts pursuant to Pennsylvania Rules of Evidence.

3. PCRA Counsel was ineffective for failing to pursue [Appellant's] *pro se* issue; namely that trial counsel was ineffective for failing to prepare [Appellant] to take the stand in his own defense.

4. PCRA counsel was ineffective for failing to pursue [Appellant's] *pro se* issue; namely that trial counsel was ineffective for failing to file a motion to sever the trial.

5. PCRA counsel was ineffective for failing to pursue [Appellant's] *pro se* issue; namely that trial counsel was ineffective for failing to call impeaching witnesses.

6. PCRA counsel was ineffective for failing to pursue [Appellant's] *pro se* issue; namely that appellate counsel was ineffective for failing to raise the issue that Trial Court erred in denying trial counsel's motion to strike juror 56 for cause.

7. PCRA counsel was ineffective for failing to raise the issue that trial counsel was ineffective for failing to object to *voir dire* concerning juror 56's (and others) possible bias being conducted in private without [Appellant] (or anyone other than counsel, the Court, and the Commonwealth) being present.

8. PCRA counsel was ineffective for failing to raise the issue that trial counsel was ineffective for failing to obtain an expert to

testify regarding the complications with retrieving the deleted texts with erroneous dates and times.

9. PCRA counsel was ineffective for failing to raise the issue of the cumulative effect of these incidences of ineffective assistance.

Brief of Appellant, at 6-7.

Our standard of review for challenges to the denial and dismissal of petitions filed pursuant to the PCRA is well-settled.

> We must determine whether the findings of the PCRA court are supported by the record and whether the court's legal conclusions are free from error. The findings of the PCRA court and the evidence of record are viewed in a light most favorable to the prevailing party. The PCRA court's credibility determinations, when supported by the record, are binding; however, this [C]ourt applies a *de novo* standard of review to the PCRA court's legal conclusions. We must keep in mind that the petitioner has the burden of persuading this Court that the PCRA court erred and that such error requires relief. Finally, this Court may affirm a valid judgment or order for any reason appearing of record.

*Commonwealth v. Montalvo*, 205 A.3d 274, 286 (Pa. 2019) (citations omitted).

Moreover,

> [t]o be entitled to PCRA relief, [an] appellant must establish, by a preponderance of the evidence, his conviction or sentence resulted from one or more of the enumerated errors in 42 Pa.C.S.[A.] § 9543(a)(2). These errors include a constitutional violation or ineffectiveness of counsel, which "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Id*. Additionally, [an] appellant must show his claims have not been previously litigated or waived, and "the failure to litigate the issue prior to or during trial ... or on direct appeal could not have been the result of any rational strategic or tactical decision by counsel." 42 Pa.C.S.[A.] § 9543(a)(3), (a)(4). An issue is previously litigated if "the highest appellate court in which [appellant] could have had review as a matter of right has ruled on the merits of the issue." 42

- 6 -

Pa.C.S.[A.] § 9544(a)(2). An issue is waived if appellant "could have raised it but failed to do so before trial, at trial, ... on appeal or in a prior state postconviction proceeding." 42 Pa.C.S.[A.] § 9544(b).

**Commonwealth v. Cousar**, 154 A.3d 287, 296 (Pa. 2017) (some citation omitted).

Appellant first contests the PCRA court's erroneous statement in its Rule 907 Notice to Dismiss characterizing Appellant's first PCRA petition as "untimely." Both the PCRA court and the Commonwealth acknowledged this mistake prior to the PCRA court's ultimate determination that Appellant's PCRA petition was otherwise without merit. Accordingly, this issue affords Appellant no relief.

In Appellant's second through sixth issues, he presents layered ineffective assistance of counsel claims asserting that PCRA counsel failed to develop the *pro se* claims of trial counsel's deficient stewardship he raised in his *pro se* petition. Initially, we review whether Appellant timely raised his layered ineffective assistance of counsel claims. Our jurisprudence is clear that a PCRA petitioner must raise claims of ineffective assistance of PCRA counsel at the first opportunity to do so, even when on appeal, or waive the claim. **Commonwealth v. Spady**, 2023 WL 2923091 *1, *3 (Pa. Super. April 13, 2023) (unpublished memorandum), *citing* **Commonwealth v. Parrish**, 273 A.3d 989, 1002 (Pa. 2022) (holding a petitioner must raise a claim of PCRA counsel's ineffectiveness at the first opportunity, which may present as early as the Rule 1925(b) statement, lest petitioner waive such claim by failure to do so). Because Appellant raised his layered claims at the earliest

- 7 -

opportunity, namely, in his Rule 1925(b) statement, we proceed to review his claims on the merits.

When raising a layered claim of ineffective assistance, a petitioner must first assert that trial counsel was ineffective in some way and that appellate or PCRA counsel was also ineffective for not raising the issue at the first opportunity. We have held that when "determining a layered claim of ineffectiveness, the critical inquiry is whether the first attorney that the defendant asserts was ineffective did, in fact, render ineffective assistance of counsel. If that attorney was effective, then subsequent counsel cannot be deemed ineffective for failing to raise the underlying issue." *Commonwealth v. Burkett*, 5 A.3d 1260, 1270 (Pa. Super. 2010).

"[C]ounsel is presumed effective, and [the appellant] bears the burden of proving otherwise." *Commonwealth v. Fears*, 86 A.3d 795, 804 (Pa. 2014), *quoting* *Commonwealth v. Steele*, 961 A.2d 786, 796 (Pa. 2008). To prevail on an ineffectiveness claim, an appellant must establish:

> (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) [appellant] suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.

*Commonwealth v. Lesko*, 15 A.3d 345, 373-374 (Pa. 2011), *citing* *Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987).

> A claim has arguable merit where the factual averments, if accurate, could establish cause for relief. *See Commonwealth v. Jones*, 876 A.2d 380, 385 (Pa. 2005) ("if a petitioner raises allegations, which, even if accepted as true, do not establish the

underlying claim ..., he or she will have failed to establish the arguable merit prong related to the claim"). Whether the facts rise to the level of arguable merit is a legal determination.

The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Stewart*, 84 A.3d 701, 707 (Pa. Super. 2013) (some quotations and citations omitted). "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." *Id*.

Appellant's second issue assails PCRA counsel for failing to claim that trial counsel rendered ineffective assistance by withdrawing a pretrial motion objecting to the Commonwealth's Pa.R.E. 404(b) notice seeking to admit evidence of Appellant's involvement in three other robberies of the same Rite Aid within 30 days before the murder that occurred on September 19th. Initially, when trial counsel's motion gained the trial court's favorable ruling precluding the admission of such other bad acts evidence in the joint trial, the Commonwealth indicated to trial counsel that it would seek to sever Appellant's murder trial from the co-defendants' trial and file three additional substantive charges of robbery along with a conspiracy charge against him for each robbery count. N.T., 1/20/15, at 12.

Trial counsel consulted with Appellant about his options and recommended that he avoid the separate trial on four felony counts, including a count of felony murder, and opt instead for the joint trial on a single count of felony murder, albeit where he would withdraw his objection to the other bad acts evidence showing his connection to the previous robberies of the Rite Aid. At the pretrial hearing of January 20, 2015, defense counsel updated the trial court on Appellant's decision on the question of severance:

> [**Defense Counsel**]: Okay, after lengthy discussions with my client yesterday at the prison wherein we discussed the benefits pros and cons of both scenarios, Your Honor, at this point it is our intention to withdraw the 404-B or have this Court reverse the 404-B order if you will have this matter proceed to a jury trial with the co-Defendants on Tuesday. And it is my understanding that regardless of what happens in this trial, the Commonwealth will not charge Mr. Mahmud or at least those are the preliminary discussions that we had with those other three robberies, is that correct?
>
> [**Prosecutor**]: Yes.
>
> . . .
>
> **Trial Court**: If your client is now withdrawing his objection to the motion based on the representation from the Commonwealth that if you withdraw that they will not seek to try your client on the robbery cases, correct?
>
> **Defense Counsel**: That is correct, there are three other robbery cases.
>
> **Trial Court**: And so, in fact you are now asking me to I guess reconsider my decision on the 404-B motion Orally I would think, and you have no objection to me granting the [Commonwealth's] 404-B motion, correct?

**Defense Counsel**: Correct, and if I just may amplify the record a little bit more with –

**Trial Court**: Is that correct, [prosecutor]?

**Prosecutor**: Yes, Your Honor. I mean in essence the Commonwealth puts a Defendant on notice that they intend to admit evidence and then it is Defense Counsel's responsibility to either object and I think [Defense Counsel] did object through the memorandum. I guess in essence what he is saying is he is withdrawing the objecting and if the [trial court] wants to enter an order granting the Commonwealth's notice I am satisfied with that.

. . .

**Defense Counsel**: . . . [If] the court granted the [defense] motion and was going to preclude the Commonwealth from introducing evidence of the involvement allegedly in these other three robberies, [the Commonwealth] would sever the case. We would then have a trial where the potential exists that those three robberies would be tried together with the Rite Aid case, the felony homicide case due to the similarity and course of conduct that the Commonwealth would allege there would be justification for those charges to be tried together. In that case the jury would of course hear the evidence of those robberies because those charges would be before the jury on trial in addition to the homicide case. The only way that wouldn't occur is if the Court refused to try those charges jointly. It is my humble opinion that given the alleged similarities that it would be difficult for the defense to obtain a severance on those charges.

**. . . .**

N.T., 1/20/15, at 5-7.

The trial court directed trial counsel to colloquy Appellant about the decision to withdraw the successful motion blocking the Commonwealth's use of other bad act evidence. In the colloquy, Appellant indicated he had listened to and understood the discussion that had just taken place in open court,

- 11 -

confirmed trial counsel and he had spent several hours the day before discussing their options in this regard, and informed the trial court that he understood his options and was in agreement with trial counsel that a joint trial with the evidence coming in as 404-B evidence to show motive or common plan—not guilt—was preferable to undergoing severance and a separate trial where he would face not only the murder charge but also three substantive charges of robbery along with an accompanying charge of conspiracy on each robbery charge that would expose him to a potential, additional sentence of 60 years' incarceration. N.T. at 9-12. The Commonwealth agreed it would not file separate charges on the robberies if Appellant remained a co-defendant in the joint trial where the robberies would be admissible solely as Rule 404-B evidence showing a common plan and motive. N.T. at 13.

The trial court finalized the colloquy by asking Appellant if he understood that he was "avoiding a potential sentence of 60 years on those three robberies by agreeing to this," that he was "receiving a substantial benefit by agreeing to this. . . ." N.T. at 13. Appellant answered in the affirmative. N.T. at 13.

The record establishes that trial counsel had a reasonable basis for his decision to recommend that Appellant remain in the joint trial rather than opt for severance and a separate trial where he would still face the felony murder charge as well as three additional charges of robbery and conspiracy exposing

him to an additional 60 years' incarceration. Accordingly, we discern no merit to Appellant's second issue.

In Appellant's third issue, he contends PCRA counsel was ineffective for failing to pursue a claim that trial counsel was ineffective for failing to prepare Appellant to testify in his own defense. The crux of Appellant's claim is that counsel had advised him that the "mastermind" of the robbery conspiracy, co-defendant David Wiggins, would testify that while Appellant initially had conspired to commit a robbery of the Rite Aid, he had abandoned the conspiracy before the robbery took place. Because trial counsel had not prepared Appellant to testify, and Appellant therefore was unprepared to do so, the jury had no way to know that he had abandoned his conspiracy with the co-defendants.[2] This advice, Appellant concludes, was unreasonable and prejudicial, as it "vitiated a knowing and intelligent decision for Petitioner to testify on his own behalf. *See Commonwealth v. Breisch*, 719 A.2d 352, 355 (Pa. Super. 1998).

The Commonwealth responds that this claim is belied by the record, wherein during a full colloquy of Appellant conducted by counsel, Appellant

---

[2] The Commonwealth aptly responds that the notes of trial testimony show the jury heard evidence that Appellant directly communicated his abandonment to his codefendants. *See* N.T. 2/10/15, at 25, 29, 31-33. The Commonwealth continues, "To support the theory of abandonment, trial counsel relied on a text message from the Appellant to [Co-defendant] White on September 18th, the night before McClay's murder, in conjunction with perceived inconsistencies between White's trial testimony and other evidence in the record. Therefore, there was evidence of record through which trial counsel could and did argue that the Appellant abandoned the conspiracy." Brief of Appellant at 18.

indicated that he did not want to testify. PCRA counsel cited to this record in his No-Merit Letter:

> [Trial] Counsel did a full colloquy of his client regarding whether or not he wanted to testify. During this Colloquy, [trial counsel] inquired, "So, you're making a decision that you have an absolute right to testify. However, you are giving that right up to testify. Is that what I'm hearing from you? Is that correct? And [Appellant] responded, "I don't want to testify." [N.T.,2/9/15, at 226]. Counsel further confirmed that [Appellant was not forced or threatened into this decision and that it was of his own free will. [N.T., 2/9/15, at 227.] Clearly, [Appellant] was aware of his right to testify and willingly gave up that right. This claim has no merit.

No Merit Letter, 9/20/22, at 4-5. The PCRA Court, moreover, echoed PCRA counsel's observations. *See* PCRA Court Opinion, 3/23/23, at 5-6.

It is well-settled that "to sustain a claim that counsel was ineffective for failing to advise the appellant of his rights [to testify], the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf." *Commonwealth v. Nieves*, 746 A.2d 1102, 1104 (Pa. 2000).

Our review of the record reveals Appellant received a full colloquy in open court in which he expressly acknowledged that after full discussion with counsel about his right to testify, he was satisfied with counsel's advice against testifying, and he verified that the decision against testifying was his own. Accordingly, we reject his meritless, layered claim of ineffectiveness asserting interference with his right to testify.

Appellant's fourth issue is related to his second, as it is premised on the argument that trial counsel ineffectively failed to file a motion to sever his trial from that of the two co-defendants who had not pleaded guilty. At the criminal trial, evidence established that Appellant was not present in the Rite Aid at the time codefendants Wiggins and Pultro entered to commit the robbery. Wiggins' defense was that he conspired to commit the robbery but did not possess the specific intent to kill. N.T., 2/10/15, at 54-88. Pultro denied knowledge that a gun would be used and argued that Wiggins unilaterally shot and killed Mr. McClay.

Herein, Appellant focuses his argument solely on the purported prejudice stemming from "overwhelming" inculpatory video and photographic evidence depicting codefendants Wiggins and Pultro's execution of the robbery and shooting of Mr. McCray. Appellant maintains that it was difficult for the jury to separate Appellant from such highly probative evidence of Wiggins' and Pultro's guilt, even though the jury also heard evidence of Appellant's absence from the Rite Aid coupled with evidence of text messages suggesting Appellant had abandoned the plan. Brief of Appellant at 20-22; N.T., 11/1/13, at 208-213. Nevertheless, because we have already determined that a reasonable basis existed to support trial counsel's decision to forgo a motion to sever, Appellant may not prevail on this layered ineffective assistance of counsel claim.

Appellant's fifth issue charges PCRA counsel with ineffectively failing to pursue the issue in Appellant's *pro se* petition alleging that trial counsel was

ineffective for failing to call an alibi witnesses. "Counsel has a general duty to undertake reasonable investigations or make reasonable decisions that render particular investigations unnecessary." *Commonwealth v. Johnson*, 966 A.2d 523, 535 (Pa. 2009). "The duty to investigate, of course, may include a duty to interview certain potential witnesses; and a prejudicial failure to fulfill this duty, unless pursuant to a reasonable strategic decision, may lead to a finding of ineffective assistance." *Id*. at 535-36. Further, when raising a claim of ineffectiveness for the failure to call a potential witness, petitioner must establish that,

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Medina*, 209 A.3d 992, 998 (Pa. Super. 2019) (citation omitted).

For purposes of this appeal, Appellant asserts that trial counsel failed to call *impeaching* witnesses, which differs from the designation *alibi* witnesses used in his PCRA petition. Indeed, in discerning no merit to the claim as raised in the *pro se* PCRA petition, PCRA counsel observed in his no-merit letter,

> In this case, there is no evidence to support that [trial] counsel was aware or should have been aware of any possible alibi witness, or that there was any alibi witness willing and available to testify at trial. Further, even if one of the defendant's listed witnesses had testified to his whereabouts, it was never alleged that defendant was actually present at the robbery. Therefore,

- 16 -

this testimony would not have aided in establishing the defense. This claim has no merit.

PCRA counsel's No Merit Letter, 9/20/22, 5-6.

Even if we were to credit Appellant's *pro se* petition with alerting PCRA counsel that an "impeaching", rather than an "alibi" witness was available, the petition alleged only that his named witness, Danielle Maurry, was willing to testify Appellant was at her mother's home on the day Wiggins and Pultro committed the armed robbery of the Rite Aid. Again, the Commonwealth's case implicating Appellant in the crime did not depend on evidence of his whereabouts proximate to and during the time of the robbery. Accordingly, because the absence of Ms. Maurry's testimony was not so prejudicial to have denied Appellant a fair trial, counsel's failure to call Ms. Maurry as a witness did not constitute ineffective assistance of counsel.

Appellant's sixth and seventh issues involve the *voir dire* of proposed Juror 56. In his sixth issue, Appellant asserts PCRA counsel ineffectively failed to challenge direct appeal counsel's failure to challenge the trial court's erroneous denial of trial counsel's requested "for cause" strike of Juror 56, which caused trial counsel to use one of Appellant's peremptory strikes on Juror 56. In his seventh issue, Appellant asserts the related layered ineffectiveness claim assailing trial counsel's failure to object to the individual *voir dire* of Juror 56 that took place outside of Appellant's personal presence when the trial judge conducted it in the "robing room" adjacent to the courtroom where Appellant and his co-defendants remained.

A criminal defendant's right to an impartial jury is explicitly granted by Article 1, Section 9 of the Pennsylvania Constitution and the Sixth Amendment of the United States Constitution. Our Supreme Court has long stated that "the purpose of *voir dire* is to empanel a fair and impartial jury, not to empanel a jury sympathetic to positions or beliefs of either party." **Commonwealth v. Paolello**, 665 A.2d 439, 451 (Pa. 1995). As the Pennsylvania Supreme Court explained in **Commonwealth v. Johnson**, 305 A.2d 5 (Pa.1973):

> the purpose of the *voir dire* examination is to disclose qualifications or lack of qualifications of a juror and in particular to determine whether a juror has formed a fixed opinion as to the accused's guilt or innocence. The law recognizes that it would be unrealistic to expect jurors to be free from all prejudices, a failing common to all human beings. We can only attempt to have them put aside those prejudices in the performance of their duty, the determination of guilt or innocence. We therefore do not expect a tabula rosa but merely a mind sufficiently conscious of its sworn responsibility and willing to attempt to reach a decision solely on the facts presented, assiduously avoiding the influences of irrelevant factors.

*Id.* at 8.

With these concepts in mind, we further observe that how *voir dire* will be conducted is left to the discretion of the trial court. **Commonwealth v. Moore**, 756 A.2d 64, 65 (Pa. Super. 2000). However, "a complete denial of the right to an examination of jurors to show bias or prejudice is a palpable abuse of discretion and entitles the defendant to a new trial." **Commonwealth v. Holland**, 444 A.2d 1179, 1180 (Pa. Super. 1982) (quoting **Commonwealth v. Foster**, 293 A.2d 94 (Pa.Super.1972)).

Decisions of the trial judge concerning *voir dire*, therefore, will not be reversed in the absence of palpable error. ***Commonwealth v. Ellison***, 902 A.2d 419, 424 (Pa. 2006). An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. ***Commonwealth v. Griffin***, 804 A.2d 1, 7, 12 (Pa. Super. 2002).

Appellant's sixth issue relies on a layered ineffectiveness claim attacking counsels' collective failure to challenge the trial court's allegedly erroneous denial of a requested "for cause" strike of Prospective Juror 56 that led trial counsel to use a peremptory strike to remove him. Courts have found reversible error where a party was forced to use a peremptory strike to strike a juror that should have been stricken for cause. ***See Commonwealth v. Penn***, 132 A.3d 498, 505 (Pa. Super. 2016).

Here, Prospective Juror 56 responded that if chosen as a juror he "probably" would, or "thinks he can", be fair and impartial despite having read a newspaper article about the Rite Aid robbery two years earlier and having experienced the challenges attendant to his wife's being robbed at gunpoint in her place of employment 25 years earlier. Further questioning by counsel and the trial court elicited from the prospective juror responses that he had no doubt that he could be fair and impartial and that he was sure he could apply the proof beyond a reasonable doubt standard in his deliberations as a juror. N.T., 1/28/15, at 280-88.

Nevertheless, trial counsel moved to strike Prospective Juror 56 for cause due to the "equivocation" and "hesitation" in his responses, but the trial court denied the motion, prompting one of the defense counsel—the record does not reflect which one—to use a peremptory strike on Juror 56. *Id*.

On the same record, this Court sitting *en banc* in **Commonwealth v. Wiggins**, 1688 EDA 2015, 2019 WL 3251645, at *6 (Pa. Super. 2019) (non-precedential decision) **appeal denied** 223 A.3d 659 (Pa. 2020), rejected the same challenge raised by codefendant Wiggins in his appeal.[3] Specifically, we concluded that "we give great deference to the trial court's observations of Prospective Juror 56, and find that the trial court did not palpably abuse its discretion by refusing to exclude Prospective Juror 56 for cause." **Id.** at *6 Accordingly, we discern no arguable merit to the ineffective assistance of counsel claim based on the trial court's refusal to strike Prospective Juror 56 for cause.

As noted above, Appellant's seventh issue couches within a layered ineffectiveness claim a challenge to his *voir dire* of Prospective Juror 56 taking place outside of his presence. The United States Supreme Court "has explicitly affirmed that *voir dire* is a critical stage of the criminal proceeding, during which the defendant has a constitutional right to be present." **Commonwealth v. Hunsberger**, 58 A.3d 32, 37 (Pa. 2012) (citing **Gomez v. United States**, 490 U.S. 858, 873 (1989)). **See also** Pa.R.Crim.P. 602(A)

---

[3] **See Wiggins** at **1-4, which provides an extensive reproduction of the relevant notes of testimony of the *voir dire* of Prospective Juror 56.

("The defendant shall be present at every stage of the trial including the impaneling of the jury[.]"). "However, like the [Supreme Court of the United States, our Supreme] Court has recognized that the right to be present in the courtroom during one's [non-capital] trial is not absolute." *Hunsberger,* 58 A.3d at 38. For example, a "defendant's presence in chambers and at sidebar is not required where he is represented by counsel." *Id.* at 38 (quoting *Commonwealth v. Boyle*, 447 A.2d 250 (Pa. 1982)).

The Pennsylvania Supreme Court in *Hunsberger* recognized "that a defendant's right to participate in *voir dire* may be satisfied through procedures that both ensure the defendant's right to choose and be tried by a fair and impartial jury, yet make accommodations for trial court efficiency and safety, and the comfort protection, and respect for the jury pool." *Hunsberger,* 58 A.3d at 40.

Appellant's ineffectiveness claim complains specifically of the individual *voir dire* of Prospective Juror 56 taking place in the robing room instead of in the adjacent courtroom where he and his codefendants remained. At the outset of this individual *voir dire*, the trial court advised counsel as follows:

> **THE COURT:** First of all, I just want to say that if at any time any of the defense attorneys need to take a break to go out and to consult with their respective client, I would certainly give you a break to do that, but if I don't hear that you want to, I'm going to assume that you do not need to consult with your client. Okay. Everybody – I think I got three heads nodding.

> **[Appellant's Trial Counsel]:** Yes, Your Honor. It's fair enough.

N.T. of *Voir Dire*, 1/28/15, at 43.

As the excerpt shows, the trial court implemented a *voir dire* procedure that allowed consultation between counsel and Appellant in the adjacent courtroom to occur "at any time" during *voir dire*. In this regard, we find the effect of the trial court's *voir dire* arrangement was much like that in **Hunsberger**, which involved individual *voir dire* that was conducted between only the trial judge and counsel at sidebar and outside the range of the defendant/appellant's Hunsberger's hearing. While the record in **Hunsberger** showed the defendant/appellant communicated with counsel about the *voir dire* despite his inability to hear the ongoing procedure, the present record similarly establishes that counsel and Appellant retained the option to consult during the *voir dire* of Prospective Juror 56. Accordingly, discerning no deprivation of Appellant's right to participate in the jury selection process, we find no merit to Appellant's seventh issue.[4]

---

[4] Furthermore, Appellant fails to demonstrate either merit or prejudice in his additional Issue #7 argument charging trial counsel with ineffectively using a peremptory strike on Prospective Juror 56, as he does not contend, *inter alia*, that he would have retained Juror 56 and preserved the peremptory strike, nor does he claim that the jury chosen was incompetent or biased against him. Accordingly, this argument is meritless. *See Commonwealth v. Herring*, No. 796 WDA 2022, 2023 WL 8525140, at *4 (Pa. Super. Ct. Dec. 8, 2023) (non-precedential decision) (holding constitutional challenge to trial court's conducting jury selection in defendant's absence was "meritless"; defendant identified no aspect of *voir dire* to which he would have objected, nor did he indicate how the jury chosen was incompetent or unfair against him).

In Appellant's eighth issue, he argues that PCRA counsel was ineffective for not alleging trial counsel was ineffective for failing to obtain an expert to testify that testimony offered by Delaware County Detective Edmond Pisani of the Criminal Investigation Unit/Computer Forensic Unit of the Delaware County District Attorney's Office regarding the dates of text messages entered into evidence "could have [been] (and most likely were) erroneous."

Both the PCRA Court and the Commonwealth dismiss this issue as waived for Appellant's failure to include it in his PCRA petition, but, as we discussed *supra*, claims of ineffective assistance of PCRA counsel may be raised "at the first opportunity, even if on appeal." **Spady**, **supra**; **Parrish**, **supra**. In **Commonwealth v. Bradley**, 261 A.3d 381, 405 (Pa. 2021) our Supreme Court not only emphasized the need to preserve a petitioner's right to effective PCRA counsel but also reaffirmed our Supreme Court's preference for evidentiary hearings in PCRA matters, and explained:

> In some instances, the record before the appellate court will be sufficient to allow for disposition of any newly raised ineffectiveness claims. However, in other cases, the appellate court may need to remand to the PCRA court for further development of the record and for the PCRA court to consider such claims as an initial matter. Consistent with our prior case law, to advance a request for remand, a petition would be required to provide more than mere boilerplate assertions of PCRA counsel's ineffectiveness; however, where there are material facts at issue concerning claims challenging counsel's stewardship and relief is not plainly unavailable as a matter of law, the remand should be afforded.

***Id.*** at 402 (citations and footnote omitted and formatting altered).

Here, however, because Appellant's argument on this issue does not advance beyond a bald, speculative allegation that the incriminating text messages admitted into evidence "could have been" erroneous, it merits no relief, as we find it waived. ***Commonwealth v. Roche***, 153 A.3d 1063, 1072 (Pa. Super. 2017) ("the failure to properly develop a claim renders an issue waived.").

Appellant's final issue maintains that PCRA counsel was ineffective for failing to raise the issue of the cumulative prejudicial effect of the purported incidences of ineffective assistance of counsel. While no number of failed ineffectiveness claims may collectively warrant relief if they fail to do so individually, when the failure of individual claims is grounded in lack of prejudice, the cumulative prejudice from those individual claims may properly be assessed. ***Commonwealth v. Koehler***, 36 A.3d 121, 161 (Pa. 2012). Here, after reviewing Appellant's failed claims of ineffective assistance of counsel and identifying just one that was denied for its lack of prejudice, we conclude that the claims in the aggregate do not prejudice him.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date:  2/20/2024